[No. 41776. En Banc. October 7, 1971.]

DARLENE KENNEDY, *Respondent*, v. THE STATE DEPARTMENT OF PUBLIC ASSISTANCE, *Appellant*.

*Slade Gorton, Attorney General,* and *Robert M. Mc-Donald, Assistant,* for appellant.

*Allan B. Ament,* for respondent.

HALE, J.—Keith Kennedy was drafted into the United States Army; his wife, Darlene, took care of their four small children. Darlene Kennedy was expecting a fifth child when she applied to the Washington State Department of Public Assistance for aid to dependent children. The department ruled her ineligible because, as a soldier, her husband was fully employed. The question is whether full-time regular military service as a draftee bars a soldier's children and his wife from that classification of public assistance known as Aid to Families with Dependent Children (AFDC).

When Keith Kennedy was inducted as a draftee into the army, he lived with his wife and children at Grants Pass, Oregon. He served in the army only a short time when, because of financial hardship, he was released from regular service on condition that he fulfill his military obligations through membership in the Oregon National Guard. Out of

the army and assigned to a National Guard unit at Medford, Oregon, Kennedy went through a period of unemployment then landed a job as a logger near Woodland, Washington, at wages of about $800 a month. Living in this state and working regularly, Kennedy began missing the drills and meetings of his National Guard unit in Medford. Because of his failure to comply with the terms of his enlistment in the National Guard, Kennedy was ordered to active duty with the army. He reported to the Fort Lewis reception center and was then assigned to an army unit stationed in Germany with the grade of Private E-2, a pay grade entitling him to a military base pay of $118.20 per month.

The $118.20 base pay did not represent Kennedy's total emoluments. As a soldier with a wife and four children dependent upon him for support and maintenance, the federal government provided him with a dependency allotment of $60 to which Kennedy was required to add $40 from his pay. To this $100, Kennedy supplied an additional $45, deducted from his soldier's pay of $118.20.

Darlene Kennedy thus received $145 per month, of which the United States contributed $60 from the National Treasury and her husband $85 from his pay of $118.20. This left Kennedy with $33.20 per month from his soldier's pay subject to further deduction for social security and other taxes and charges. The combined family income derived from Kennedy's earnings as a soldier thus came to $145 payable each month to the wife, plus $33.20 monthly to the husband in the army, which presumably afforded him rations, quarters and medical care.

January 12, 1970, Mrs. Kennedy, still residing in the state of Washington and expecting a fifth child, applied to the Department of Public Assistance of the State of Washington for public assistance under the category of AFDC. Her application, as earlier noted, was denied on the grounds that her husband was fully employed. Mrs. Kennedy requested a fair hearing as designated by statute. March 10, 1970, the hearing was held and, as a result, the director on March 26,

1970, issued an order sustaining the department's earlier administrative decision that the families of military personnel, regardless of rank, grade or pay status of the father, are ineligible for AFDC because the father is fully employed, or has full-time employment.[1] In affirming the departmental ruling, the director applied the Department of Public Assistance rule 6.241(1), as set forth in the department's manual 2, which states that:

A father is considered to be unemployed who does not work at least thirty-five hours per week, or less than the number of hours considered full-time by the industry in which he works, whichever is less.

From this fair hearing decision, Mrs. Kennedy took an appeal to the superior court which reversed the director. From this judgment, the department appeals.

Aid to families with dependent children is covered under the general public assistance statutes (RCW Title 74), more particularly in RCW 74.12.010:

For the purposes of the administration of aid to families with dependent children assistance, the term "dependent child" means any child in need under the age of eighteen years, or any child between eighteen and twenty-one years of age regularly attending high school in pursuance of a course of study leading to a high school diploma or its equivalent or a course of vocational or technical training designed to fit him for gainful employment, who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of the parent, and who is with his father, mother, grandmother, grandfather, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a

---

[1]The director's order reads, in part: "In the instant case the children are not deprived of parental support and care by reason of the death, continued absence or incapacity of a parent or unemployment of the father. The fact is, the father is in the Army, *working the same number of hours and drawing the same pay as anyone else in his classification.*

"The problem is one of insufficient income, and the Department of Public Assistance has no program of financial aid to meet this need.

"The Kelso office of the Department of Public Assistance had no choice other than to deny assistance and refer appellant to the American Red Cross." (Italics ours.)

place of residence maintained by one or more of such relatives as his or their homes. . . . *Provided,* That the director shall have discretion to provide that aid to families with dependent children assistance shall be available to any child in need who has been deprived of parental support or care by reason of the unemployment of a parent or stepparent liable under this chapter for the support of such child, to the extent that matching funds are available from the federal government.

The Department of Public Assistance (now a division of the Department of Social and Health Services) and the director contend that their decision was in conformity with the federal regulations covering AFDC, and refer to the Department of Health, Education and Welfare Handbook of Public Assistance Administration, part 4, § 3424.21 which states in effect that a person working at least 40 hours a week, or for the number of hours considered to be full time by the industry, may not be deemed unemployed.[2]

---

[2]The Department of Health, Education and Welfare Handbook of Public Assistance Administration, part 4, § 3424.21, states:

Under the new law a "dependent child" includes a child deprived of parental support or care "by reason of unemployment . . . of a parent . . . ." The definition of the term "unemployment" is the responsibility of the State. A State may define the conditions that constitute the unemployment of the parent as broadly or as restrictively as is consistent with the conditions existing in the State, and within the limits of maintaining a reasonable relationship between such definition and the purpose of the new legislation, i.e., to aid needy children whose parents are unemployed.

. . .

On the other hand, a State may not consider as "unemployed" a fully employed person, even though his income and other family resources are insufficient, under the State's test, to meet the family's "need." For example, a person working at least 40 hours per week or number of hours considered full time by the industry for the job may not be included within a State's definition of "unemployed," even though he may be actively seeking more remunerative employment.

Regulations which superseded the Handbook, 45 C.F.R. § 233.100, promulgated January 24, 1969, are to the same effect. Each state is given some latitude in defining who is an unemployed person. Although a state *must* include within its definition persons working less than 30 hours per week or less than three-fourths the hours considered full time in the industry, it *may* include persons working less than 35 hours

The department does not dispute that the Kennedy children are both legally and actually needy. Its decision is based largely on the idea that, regardless of need, the family is ineligible because their soldier father is fully employed, and that the public assistance statutes were not intended to foster substandard employment or subsidize employers who refuse to pay their employees a living wage. The department contends, too, that it is the army that is deficient and not the Washington State Department of Public Assistance.

There is merit to the department's position, and ordinarily where one or both parents of dependent children are fully employed, the state has a right to assume—in the absence of emergency or unusual circumstances—that the employer will pay a wage or salary sufficient to enable the family to maintain a reasonable standard of living and provide the necessities and some of the luxuries of life. Employers, we agree, ought not be permitted to look to tax-supported public assistance and public welfare programs as a means or source of supplemental income to their employees and as a device by which to maintain an inadequate wage system for regular gainful employment. Public assistance should not become a subsidy for substandard employers.

But Mrs. Kennedy's husband is not in private employment. He has little control over his family's economic destiny. He has no labor union or other agency to look to as a means of persuading his employer to pay him a living wage. He is without access to collective bargaining or any negotiating forum or other means of economic persuasion, or even the informal but concerted support of his fellow employees. He cannot quit his job and seek a better paying one. His position as soldier and breadwinner is unique, and

---

per week or less than the hours considered full time in the industry in which the person is employed. The applicable Washington provisions defining unemployment as employment less than 35 hours per week or full time in the industry in which employed appears in WAC 388-24-135, *et seq.*

his position in contemplation of the social security laws and the statutes affecting AFDC is likewise unique.

■ As a soldier in the United States Army, he is serving full time, but is not fully employed. In the sense intended by the social security statutes and the public assistance statutes (RCW 74.12.010), he should not be regarded as fully employed because, despite putting in full time, his take-home pay—that portion of his earnings which he could readily allocate to the support and maintenance of his wife and dependent children—would be inadequate by public assistance standards. And there is no action he could lawfully take to make his earnings adequate while putting in full time on his job. His was a kind of involuntary employment where legally he could do virtually nothing to improve the economic welfare of his family.

Military service, mandated under the Selective Service Act (50 App. U.S.C. § 451 (1968)), being apparently involuntary, compulsory and unavoidable, is, we think, a unique form of employment which does not lend itself readily to classification within or by the public assistance statutes. Although a soldier's duty hours may exceed 40 per week and at times he may be required to serve 24 hours a day, he collects no overtime or additional recompense. Engaged in full-time employment, he is not paid for full-time work.

The determinant to eligibility for AFDC, we think, is not whether petitioner's husband worked more than 40 hours a week in the army, or the ordinary number of hours in his industry, or whether his duty placed him under military obligation 24 hours a day, but rather whether he had been drafted into a military job and was required by law to serve at it for less than a living wage. Military personnel and their families are not categorically excluded from eligibility by statute; the exclusion has come about by administrative construction. Aside from the general requirements, therefore, eligibility for AFDC with respect to military personnel drafted into the armed forces is whether the employment is involuntary. In the present case, all of the general qualifications for AFDC eligibility existed: a wife

and dependent children; a substandard income from the father's full-time employment; and a lack of outside income, earnings or property. Compulsory military service we believe neither adds to nor detracts from these general qualifications.

The department's answer that it is the army which has the burden to support the Kennedy family and should be required to pay a soldier enough for him and his family to live on or else discharge him from the service, although, perhaps, sound as a matter of principle, does not meet the Kennedys' contentions in law. Both the department and the army are creatures of law and financed by general taxes. Until the statutes are changed, the army cannot pay more than the amount authorized by law, and the department should not pay less than the amount prescribed by law.

The department cites a case where the father of nine children worked more than the minimum of 40 hours per week for an income less than public assistance would provide such a family. There, the United States District Court —three judges sitting—declined to order the Department of Health, Education and Welfare and the state and county departments of public welfare to provide AFDC for the reason that, under the statutes and regulations of California, the father held full-time employment. *See Macias v. Finch*, 324 F. Supp. 1252 (N.D. Cal. 1970), *aff'd*, 400 U.S. 913, 27 L. Ed. 2d 153, 91 S. Ct. 180 (1970).

*Macias*, however, did not involve families of men drafted into the military service so we do not find its rationale persuasive here, and we need not determine now whether this court would accept its rationale or reach the same conclusion were a similar case before us. There, at least theoretically, the petitioners were free to seek and obtain better employment at a higher rate of pay, and we think that the *Macias* case is based in part on the idea that the public assistance funds ought not, under existing statute, be utilized to subsidize industries or businesses that paid substandard wages.

The opinion in *Remillard v. Carleson*, 325 F. Supp. 1272

(N.D. Cal. 1971), three judges sitting with one dissenting, in our judgment rests on a more persuasive rationale: There, two "mothers whose husbands are absent from home while on duty with the armed forces of the United States" could and did demonstrate a need for AFDC as defined in 42 U.S.C. § 601 (1969), and California Department of Social Welfare Regulation EAS § 42-350.1, but, as in the case before us, were refused AFDC for the reasons advanced in the instant case, including the contention that the State of California ought not be held responsible for the inadequacy of the military pay scale. On the basis that the needs of the families of servicemen were of controlling significance, the court held that military service by the father did not disqualify his family from eligibility for AFDC.[3]

We are of the opinion, therefore, that a family otherwise qualified cannot be denied aid for families with dependent children (AFDC) authorized under the state's public assistance and welfare statutes and existing statutes of

---

[3] *Remillard v. Carleson,* 325 F. Supp. 1272, 1279, n.6, states: "A State Survey submitted by plaintiffs in Stoddard v. Fisher, Civil No. 11-168 (S.D. Maine) which indicates:

"(1) Twenty-two states give aid to all servicemen's families (Alaska, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Indiana, Kansas, Massachusetts, Nebraska, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Virginia);

"(2) Twenty–one states give no aid to the families of servicemen (Alabama, Arkansas, California, Florida, Georgia, Louisiana, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Mexico, Puerto Rico, South Carolina, South Dakota, Texas, West Virginia, Wisconsin, Wyoming);

"(3) Two states limit aid to the families of draftees (Idaho, Maine);

"(4) Two states limit aid to the families of draftees or enlistees who have enlisted in order to avoid the draft (Iowa, Vermont);

"(5) Five states did not participate in the survey (Kentucky, Nevada, Tennessee, Utah, Washington). Of these last five states, the Bureau of Social Science Research in Washington, D.C. has submitted to plaintiff information that Kentucky, Utah and Washington do grant AFDC to Military families. This brings the total number of states that do grant AFDC benefits to military families to twenty-five."

the United States solely because of the compulsory military service of the father.

The judgment of the trial court, including the allowance of attorney fees, is, therefore, affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, NEILL, SHARP, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.