# CARLESON, DIRECTOR, DEPARTMENT OF SOCIAL WELFARE, ET AL. v. REMILLARD ET AL.

No. 70–250. Argued April 10, 1972—Decided June 7, 1972

DOUGLAS, J., delivered the opinion for a unanimous Court. BURGER, C. J., filed a concurring opinion, *post,* p. 604.

*Jay S. Linderman,* Deputy Attorney General of California, argued the cause for appellants. With him on the brief was *Evelle J. Younger,* Attorney General.

*Carmen L. Massey,* by appointment of the Court, 405 U. S. 951, argued the cause and filed a brief for appellees *pro hac vice.*

*Solicitor General Griswold* and *Richard B. Stone* filed a brief for the United States as *amicus curiae* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Appellees are mother and child. The husband enlisted in the United States Army and served in Vietnam. The mother applied for Aid to Families With Dependent Children (AFDC) benefits at a time when the amount of the monthly allotment she received by virtue of her husband's military service was less than her "need" as computed by the California agency and less than the monthly AFDC grant an adult with one child receives in California. She was denied relief. Although the Social Security Act, 42 U. S. C. §§ 301–1394, grants aid to families with "dependent children," and includes in the term "dependent child" one "who has been deprived of parental support or care by reason of . . . continued absence from the home," 42 U. S. C. § 606 (a), California construed "continued absence" as not including military absence. It is unquestioned that her child is in fact "needy."

When the husband's allotment check was stopped, appellee again applied for AFDC benefits. She again was denied the benefits, this time because California had adopted a regulation [1] which specifically prohibited the payment of AFDC benefits to needy families where the absence of a parent was due to military service.

This action is a class action seeking a declaration of the invalidity of the regulation and an injunction re-

---

[1] Calif. Dept. Soc. Welfare Reg. EAS § 42–350.11 provides that "continued absence" does not exist:

"When one parent is physically absent from the home on a temporary basis. Examples are visits, trips made in connection with current or prospective employment, active duty in the Armed Services."

straining its enforcement on the ground that it conflicts with the Social Security Act and denies appellees the Fourteenth Amendment rights of due process and equal protection.

A three-judge District Court was convened and by a divided vote granted the relief sought. 325 F. Supp. 1272. The case is here by appeal. 28 U. S. C. §§ 1253, 2101 (b). We noted probable jurisdiction, 404 U. S. 1013.

Section 402 (a)(10) of the Social Security Act, 42 U. S. C. § 602 (a)(10), places on each State participating in the AFDC program the requirement that "aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." "Eligibility," so defined, must be measured by federal standards. *King* v. *Smith,* 392 U. S. 309. There, we were faced with an Alabama regulation which defined a mother's paramour as a "parent" for § 606 (a)(1) purposes, thus permitting the State to deny AFDC benefits to needy dependent children on the theory that there was no parent who was continually absent from the home. We held that Congress had defined "parent" as a breadwinner who was legally obligated to support his children, and that Alabama was precluded from altering that federal standard. The importance of our holding was stressed in *Townsend* v. *Swank,* 404 U. S. 282, 286:

> "*King* v. *Smith* establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under *federal* AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." (Emphasis supplied.)

In *Townsend,* we also expressly disapproved the Department of Health, Education, and Welfare (HEW)

policy which permitted States to vary eligibility requirements from the federal standards without express or clearly implied congressional authorization. *Ibid.*

*Townsend* involved § 406 (a)(2)(B) of the Act, 42 U. S. C. § 606 (a)(2)(B), which includes in the definition of "dependent children" those "under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary [of HEW]) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment." Illinois had defined AFDC eligible dependent children to include 18–20-year-old high school or vocational school children but not children of the same age group attending college. We held that § 606 (a)(2)(B) precluded that classification because it varied from the federal standard for needy dependent children. Involved in the present controversy is another eligibility criterion for federal matching funds set forth in the Act, namely the "continued absence" of a parent from the home. If California's definition conflicts with the federal criterion then it, too, is invalid under the Supremacy Clause.

HEW's regulations for federal matching funds provide [2] that:

> "Continued absence of the parent from the home constitutes the reason for deprivation of parental support or care when the parent is out of the home, the nature of the absence is such as either to interrupt or to terminate the parent's functioning as a provider of maintenance, physical care, or guidance for the child, and the known or indefinite duration of the absence precludes counting on the parent's performance of his function in planning for the present support or care of the child. If these con-

---

[2] 45 CFR § 233.90 (c)(1)(iii).

ditions exist, the parent may be absent for any reason, and he may have left only recently or some time previously."

The Solicitor General advises us that although HEW reads the term "continued absence" to permit the payment of federal matching funds to families where the parental absence is due to military service, it has approved state plans under which families in this category are not eligible for AFDC benefits.[3]   HEW has included "service in the armed forces or other military service" as an example of a situation falling under the above definition of "continued absence."   HEW Handbook of Public Assistance Administration, pt. IV, § 3422.2.

Our difficulty with that position is that "continued absence from the home" accurately describes a parent on active military duty.   The House Report speaks of children "in families lacking a father's support," H. R. Rep. No. 615, 74th Cong., 1st Sess., 10, and the Senate Report refers to "children in families which have been deprived of a father's support."   S. Rep. No. 628, 74th Cong., 1st Sess., 17.   While the Senate Report noted that "[t]hese are principally families with female heads who are widowed, divorced, or deserted," *ibid.*, it was not stated or implied that eligibility by virtue of a parent's "continued absence" was limited to cases of divorce or desertion.

We agree that "continued absence" connotes, as HEW says, that "the parent may be absent for any reason." We search the Act in vain, moreover, for any authority to make "continued absence" into an accordion-like concept, applicable to some parents because of "continued absence" but not to others.

---

[3] The present record reveals that 22 States and the District of Columbia do furnish AFDC benefits to needy families of servicemen, while 19 States and Puerto Rico do not.

The presence in the home of the parent who has the legal obligation to support is the key to the AFDC program, *King* v. *Smith,* 392 U. S., at 327; *Lewis* v. *Martin,* 397 U. S. 552, 559. Congress looked to "work relief" programs and "the revival of private industry" to help the parent find the work needed to support the family. S. Rep. No. 628, *supra,* at 17, and the AFDC program was designed to meet a need unmet by depression-era programs aimed at providing work for breadwinners. *King* v. *Smith, supra,* at 328. That need was the protection of children in homes without such a breadwinner. *Ibid.* It is clear that "military orphans" are in this category, for, as stated by the Supreme Court of Washington, a man in the military service

> "has little control over his family's economic destiny. He has no labor union or other agency to look to as a means of persuading his employer to pay him a living wage. He is without access to collective bargaining or any negotiating forum or other means of economic persuasion, or even the informal but concerted support of his fellow employees. He cannot quit his job and seek a better paying one. . . . [T]here is no action he could lawfully take to make his earnings adequate while putting in full time on his job. His was a kind of involuntary employment where legally he could do virtually nothing to improve the economic welfare of his family." *Kennedy* v. *Dept. of Public Assistance,* 79 Wash. 2d 728, 732–733, 489 P. 2d 154, 157.

*Stoddard* v. *Fisher,* 330 F. Supp. 566, held a Maine regulation invalid under the Supremacy Clause which denied AFDC aid where the father was continually absent because of his military service. Judge Coffin said:

> "We cannot help but note the irony of a result which would deny assistance to the family of a

man who finds that family disqualified from receiving AFDC on the ground that he has removed himself from the possibility of receiving public work relief by voluntarily undertaking, for inadequate compensation, the defense of his country." *Id.,* at 571 n. 8.

We cannot assume here, anymore than we could in *King* v. *Smith, supra,* that while Congress "intended to provide programs for the economic security and protection of *all* children," it also "intended arbitrarily to leave one class of destitute children entirely without meaningful protection." 392 U. S., at 330. We are especially confident Congress could not have designed an Act leaving uncared for an entire class who became "needy children" because their fathers were in the Armed Services defending their country.

We hold that there is no congressional authorization for States to exclude these so-called military orphans from AFDC benefits. Accordingly we affirm the judgment of the three-judge court.

*Affirmed.*

MR. CHIEF JUSTICE BURGER, concurring.

I join in the opinion and judgment of the Court, but on the assumption, not expressly articulated in the opinion, that a State may administratively deduct from its total "need payment" such amount as is being paid to the dependents under the military allotment system. It would be curious, indeed, if two "pockets" of the same government would be required to make duplicating payments for welfare.

The administrative procedures to give effect to this process may be cumbersome, but the right of the State to avoid overlapping benefits for support should be clearly understood.