**Mary L. ADAMS et al., Plaintiffs,**

v.

**Gail HUECKER, etc., et al., Defendants.**

No. 7815–B.

United States District Court,
W. D. Kentucky,
Louisville Division.

June 17, 1974.

Kurt Berggren, Legal Aid Society, Louisville, Ky., for plaintiffs.

Ann Hunsaker, Frankfort, Ky., for defendants.

## MEMORANDUM OPINION AND ORDER

BRATCHER, Chief Judge.

This is a class action brought under 42 U.S.C. § 1983 by a group of pregnant women on behalf of themselves and their unborn children, seeking injunctive and declaratory relief and for equitable restitution of wrongfully withheld welfare benefits. Plaintiffs allege that defendants have wrongfully withheld benefits provided for under the Aid to Families with Dependent Children (AFDC) program solely because plaintiffs' children have not been born at the time of application for such benefits. It is plaintiffs' contention that the Commonwealth of Kentucky, in so acting, is in violation of the Social Security Act, 42 U.S.C. § 601 et seq., and the regulations promulgated thereto and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343(3) and (4).

The issue presented in this action is whether the Social Security Act in the AFDC program provides for benefits to a woman whose pregnancy has been medically determined but whose child has not been born at the time of application for benefits. In other words, did Congress intend to include "unborn children" as part of the class of "dependent children" in 42 U.S.C. § 606(a).

The Act, in its definition of "dependent child" is unclear as to whether Congress intended to include unborn children in the class to receive benefits. The Act states in Section 406, 42 U.S.C. § 606:

"(a) The term 'dependent child' means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother . . .."

The plaintiffs argue that Congress intended for unborn children to be included in the definition of "dependent children". This, they contend, is in line with the purposes of the Social Security Act, Section 401, which states the express purposes for which the Act was written:

**2**

"For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life . . .."

The lack of a precise declaration as to the extent of coverage for dependent children, both in the Act itself and in the legislative history of the Act, is the differentiating factor between this case and the trilogy of Supreme Court cases cited by plaintiffs. *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Carleson v. Remillard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). In all three cases the Court held that the state imposed requirements directly conflicted with the intention of Congress as shown in the clearly defined terms of the Act. The Supreme Court, in *New York State Dept. of Social Services et al. v. Doblino et al.,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), aptly discussed the attempt of *Townsend, King* and *Carleson,* supra, to shift the burden to the defendant to show something not expressly excluded from the Act was thereby included when it held:

"In those cases it was clear that state law excluded people from AFDC benefits whom the Social Security Act expressly provided would be eligible. The Court found no room either in the Act's language or legislative history to warrant the State's additional eligibility requirement."

There is no such clear definition as to the meaning of "dependent child" here. The Court then must look to the clear or common meaning of the words to determine Congressional intent. In so examining the phrase "dependent child" the Court agrees with the holding in *Parks v. Harden,* 354 F.Supp. 620 (N.D.Ga., 1973) where the Court stated:

"As a matter of semantics, there simply is no way to conclude that the word 'child' includes something else which is not a 'child,' namely an unborn child. In legal terms, the unborn child is normally referred to as a fetus, or 'quick', or in utero and the Court knows of no cases which confer a legal right on an unborn child as such, but they grant rights to them or the mother only if born alive, or in the status as thus modified."

Although there appears to be a conflict between the two holdings, the factual situations are distinguishable. The difference between the *King, Townsend, Carleson,* supra, reasoning and that of *Parks,* supra, is not whether one looks for the intent of Congress to specifically include or exclude a certain class but rather the presence of plain language showing the intent of Congress.

An overall examination of the Act in its totality clearly convinces the Court that Congress did not intend unborn children to be included in the Section 406 definition of "dependent child". Throughout the Act the references to "child" only make sense if one means living children.

(1) Section 401 states, in part, that the purpose of the AFDC program is to encourage "care of dependent children in their own homes or in the homes of relatives".

(2) Section 402(a)(7) and (8) contains the requirement to consider the income and resources of the child in determining the amount of the benefits.

(3) Section 402(a)(11) requires notice to law enforcement officials when the state furnishes AFDC to a "child" who has been deserted or abandoned by a parent.

(4) Section 402(a)(16) requires notice to Court or law enforcement agencies of unsuitable home conditions due to neglect, abuse or exploitation of children receiving AFDC payments.

(5) Section 402(b) directs that the Secretary not approve a plan which imposes certain residence requirements which denies benefits with respect to any child residing in the state.

The above is a clear indication to this Court that Congress intended to include living children only in the class of "dependent children" referred to in Section 406(a) of the Act.

The Court is aware of the reasoning followed in some jurisdictions wherein it has been concluded that Regulation 45 C.F.R. § 233.90(C)(2)(ii), enacted by H.E.W. and which provides for AFDC payments on behalf of unborn children once pregnancy has been medically determined, is either not optional to the states or, if optional, then in violation of the Supremacy Clause. This Court, however, reads the Regulation to say that federal funds are available with respect to unborn children provided the state elects to extend coverage to that class. The Court finds no conflict between this interpretation and the requisites of the Act itself.

A basic rule of statutory construction is that deference should be given to the interpretation given the Act by the agency charged with its administration. *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); *United States v. Leslie Salt Co.,* 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441 (1956). This should be followed unless it is contrary to the clear intent of Congress. *Carleson v. Remillard,* supra. In this instance there is an absence of clear Congressional intent that would warrant a complete disregard of the agency's interpretation.

Further, the legislative history of the Regulation points out the fact that the provision for payments with respect to unborn children has always been considered optional to the states. This practice is in line with the established policy of giving the states wide discretion in setting the level of benefit payments under their respective programs. *Jefferson v. Hackney,* 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). It appears that approximately sixty (60%) percent of the jurisdictions have not deemed inclusion to be mandatory.

Although Congressional intent is elusive and sometimes difficult to determine, as in the present situation, the Court has tried to piece together from the available sources Congress' actual intent at the time the Act was formulated. Additional factors that are deemed of importance, both in determining the intent of Congress and in looking to the overall aid to needy family program, are the Medical Assistance programs, 42 U.S.C. § 701, et seq., and the Food Stamp Program, 7 U.S.C. § 2011, et seq.

Both programs, as well as Kentucky's participating statutes, KRS 205.510 et seq., and KRS 205.160(2), provide for prenatal care and nutrition assistance to women whose pregnancies have been medically determined and who are otherwise qualified for assistance. Under these programs, the woman can have her doctor bills paid for by the defendant, including hospitalization, delivery and post-delivery bills. Also, the pregnant woman, depending upon her financial need, can obtain food stamp coupons at a low rate or at no cost at all.

The above convinces this Court that Congress intended to provide for the unborn but through the above programs and not through AFDC. Obviously, Congress did not intend that the state treasuries be further burdened by payments in cases such as the one under consideration. It has not indicated any intent to require states to participate in a program for benefits in behalf of unborn children.

WHEREFORE, IT IS ORDERED AND ADJUDGED that the defendants' motion for summary judgment is sustained, and plaintiffs' cause is dismissed with prejudice.