641 P.2d 994

**Harold and Mary TAPPEN, Appellants, Cross-Respondents,**

v.

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Respondent, Cross-Appellant.**

No. 13220.

Supreme Court of Idaho.

Feb. 19, 1982.

Marc McGregor, Coeur d'Alene, for appellants, cross-respondents.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., James Alan Raeon, Deputy Atty. Gen., Boise, for respondent, cross-appellant.

DONALDSON, Justice.

This is an appeal from a district court order which affirmed an administrative hearing officer's decision. The administrative decision was in favor of the Idaho Department of Health and Welfare and affirmed the termination of appellants' public assistance grants. We affirm.

With respect to these appellants, Harold and Mary Tappen, this Court previously considered a termination of their public assistance grants. *Tappen v. State, Department of Health and Welfare*, 98 Idaho 576, 570 P.2d 28 (1977). Our decision in that case did not resolve whether or not the termination was valid but rather concluded that a conflict in the evidence remained which of necessity had to be resolved by the fact finder utilizing the appropriate standards regarding burden of proof. We reversed the district court decision which had reinstated benefits and remanded for additional administrative proceedings.

Thereafter, the Tappens and the Department reached a settlement agreement whereby the Tappens received a lump sum payment of $5,880 on March 24, 1978. The Tappens received continuing AFDC benefits following settlement until the Department redetermined their eligibility for AFDC benefits in May 1978. In making the redetermination, the Department considered information received from the Tappens that indicated that they had present funds in two bank accounts totaling $2,937.16, which remained from the March settlement. The Department's eligibility examiner made the decision to terminate the Tappens' grant pursuant to state and federal regulations.[1] The termination was to be effective May 31, 1978.

The *Tappens* pursued an administrative appeal by filing an appeal on May 31, 1978, which was heard before a hearing officer on July 12, 1978. On August 10, 1978, the hearing officer rendered his decision which affirmed the previous termination decision. An appeal was brought to the district court which resulted in an order affirming the administrative decision. Attorney fees were denied in the district court. This appeal follows.

1. The Tappens were sent an HW–15, Notice of Decision on May 19, 1978, which set forth the authority upon which the decision relied. The cited regulations, as then effective, were Department of Health and Welfare Eligibility Manual Regulations §§ 3131.53(J) (effective August 1, 1974), 3132.1(1) (effective April 1, 1972) and 45 CFR 233.20(a)(12)(ii)(b) (1977).

   Section 3131.53(J) read:
   "*3131.53 The Following Items are to be Excluded from Both Income and Resources*:
   . . . .
   (J) Any retroactive payment made to correct an underpayment of Public Assistance either in the month paid or the next following month."
   Section 3132.1(1) read:
   "*3132 Maximum Resources that may be retained: Families and Children, other than Children who are SSI Recipients or Children who would be SSI Recipients if they did not Reside in a Medical Facility*
   . . . .
   "*3132.1 Non-real Property*
   An applicant or recipient may:
   1) Retain up to $500 in cash or assets negotiable for cash . . . ."

   "§ 233.20 Need and amount of assistance.
   (a) *Requirements for State Plans.* A State Plan for . . . AFDC . . . must, as specified below:
   . . . .
   (12) *Recoupment of overpayments and correction of underpayments.*
   Specify uniform Statewide policies for:
   . . . .
   (ii) Prompt correction of underpayments to current recipients, resulting from administrative error where the State plan provides for recoupment of overpayments. Under this requirement:
   . . . .
   (b) For purposes of determining continued eligibility and amount of assistance, such retroactive corrective payments shall not be considered as income or as a resource in the month paid nor in the next following month . . . ." 45 CFR 233.20(a)(12)(ii)(b) (1977).
   In essence, the *Tappens* were informed that their assets as reflected by their bank accounts exceeded the $500.00 limit imposed by § 3132.-1(1).

We first address the appellants' argument that the administrative actions taken by the Department resulted in a frustration of the statutory purpose behind the AFDC program. Appellants argue that they were eligible for public assistance grants throughout the appellate process of *Tappen v. State, supra,* and to permit the Department to make a lump sum payment and then two months later to terminate their grants on the basis of their possession of excess resources is inequitable and results in a frustration of the statutory purpose behind the AFDC program. We are unconvinced. A purpose of the AFDC program appears in the language of 42 U.S.C. § 601:

"For the purpose of encouraging the care of dependent children in their own homes ... by enabling each State to furnish financial assistance ..., as far as practicable under the conditions in such State, to needy dependent children and the parents ... with whom they are living to help maintain and strengthen family life and to help such parents ... to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection ...."

Implicit in this provision is that the program is to provide for the current needs of eligible "needy dependent children."

■ While the Department has considerable latitude in regulating its AFDC program, it is still required to conform with all applicable terms of the federal AFDC program. *See Carleson v. Remillard,* 406 U.S. 598, 600–01, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972); *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 318–19, 88 S.Ct. 2128, 2134, 20 L.Ed.2d 1118 (1968); I.C. § 56–209 (1976) (current version at I.C. § 56–209 (Supp.1981)). In *Tappen v. State, supra,* we held that the Department was delegated the power to define "dependent children." *Id.* 98 Idaho at 579–80, 570 P.2d 28. By extension our holding can be read to approve the promulgation of regulations concerning how eligibility is determined and reevaluated over time. *See* 42 U.S.C. § 602(a)(7); I.C. §§ 56–209, –210 (current versions at I.C. §§ 56–209, –210 (Supp. 1981)); 45 C.F.R. 233.20(a)(1), (2), (3) (1977). A basic principle of both the state and federal regulation of the AFDC program requires that in determining need, deprivation, dependency and ultimate eligibility for public assistance that all currently and actually available income and resources of a recipient be considered. *See Lewis v. Martin,* 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); 42 U.S.C. § 602(a)(7); I.C. § 56–210; 45 C.F.R. 233.20(a)(1), (2), (3).

■ The termination of the appellants' benefits was pursuant to departmental regulations which were consistent with the applicable sections of the Social Security Act and pertinent federal regulations. *Rosado v. Wyman, supra; King v. Smith, supra;* I.C. § 56–209 (1976) (current version at I.C. § 56–209 (Supp.1981)). To remain eligible for public assistance grants, the Department of Health and Welfare regulation § 3132.1(1) provided that recipients may "[r]etain up to $500 in cash ...." In determining the available resources and income of recipients, regulation § 3131.53 provided for the exclusion of particular items from both income and resources. Section 3131.53(J), which comports with 45 C.F.R. 233.20(a)(12)(ii)(b) (1977), excluded from income and resources: "Any retroactive payment made to correct an underpayment of Public Assistance either in the month paid or the next following month." The record reveals that the Department followed its regulations and excluded the March payment from the appellants' resources during March and April but in May considered what remained from that payment as a resource. Nothing in the record reflects any departmental wrongdoing such as to require an exception to § 3131.53(J). We hold that § 3131.53(J) and § 3132.1 were consistent with the purposes of the AFDC program as established by 42 U.S.C. § 601 *et seq.* and as implemented in Idaho by I.C. § 56–209.

■ We next address the legal effect of the failure of the Department to comply

with its own then effective regulation § 3385.2 (effective December 1, 1973). Section 3385.2 provided that: "A copy of the [administrative hearing officer's] decision shall be sent to the appellant, the Regional Director and the Field Office within 20 days after the conclusion of the hearing." The decision was nine days late in being sent. Appellants contend that *Citizens Utilities Co. v. Idaho Public Utilities Commission*, 99 Idaho 164, 579 P.2d 110 (1978) provides analogous authority for evaluating the effect of this delay. We disagree. The *Citizens* case involved a review of administrative proceedings before the Idaho Public Utilities Commission concerning requested rate increases. The Commission failed to reach a decision on the merits of the requested increases within the seven-month period of suspension permitted under I.C. § 61–622. Under I.C. § 61–622, such a failure results in the increases becoming automatically effective subject to subsequent administrative action. *Citizens Utilities Co. v. Idaho Public Utilities Commission, supra,* at 169; 579 P.2d at 115. We hold that § 3385.2 did not contemplate an analogous result, *i.e.* that benefits continue subject to another termination. Implicit in I.C. § 61–622 is that a failure to reach a decision within the suspension period makes the requested increases effective. No analogous inference can be drawn with respect to § 3385.2. Notably the Department's regulations neither established sanctions nor directed any particular result from a delay beyond 20 days. We consider § 3385.2 to have been directory and a failure to have complied with it in this case does not vitiate the validity of the administrative decision. *See Koehn v. State Board of Equalization, Department of Alcoholic Beverage Control,* 166 Cal.App.2d 109, 333 P.2d 125, 132 (Cal. Dist.Ct.App.1958). We hold that the nine-day delay was not prejudicial particularly since the decision was timely rendered pursuant to the 90-day limit established by 45 C.F.R. 205.10(a)(16) (1977).[2] *See also Jones v. Grain Club*, 227 Kan. 148, 605 P.2d 142 (1980).

 The Department presented an additional issue by cross-appeal: whether the district court erred in denying an award of attorney fees to the department? The Department argues that it was entitled to attorney fees at the trial court level pursuant to I.C. § 12–121. Further, the Department argues that the district court's order adopting the hearing officer's Findings of Fact and Conclusions of Law and affirming his decision was deficient because it did not support the denial of attorney fees with any opinion or findings of fact as required by I.R.C.P. 52(a). We disagree.[3] The Department has failed to demonstrate and the record does not reveal that the district court abused its discretion by denying an award of attorney fees. *E.g., Lewis v. Fletcher*, 101 Idaho 530, 532, 617 P.2d 834, 836 (1980); *Potter v. Mulberry*, 100 Idaho 429, 432, 599 P.2d 1000, 1003 (1979); *Levra v. National Union Fire Ins. Co. of Pittsburgh*, 99 Idaho 871, 874, 590 P.2d 1017, 1020 (1979).

The district court order is affirmed. Attorney fees on appeal are denied.

BAKES, C. J., and McFADDEN, BISTLINE and SHEPARD, JJ., concur.

---

2. "(a) *State plan requirements.* A State plan ... shall provide for a system of hearings under which:

    ....

    (16) Prompt, definitive, and final administrative action shall be taken within 90 days from the date of the request for a hearing." 45 CFR 205.10(a)(16) (1977).

3. Judgment in this case was entered prior to this Court's adoption of I.R.C.P. 54(e)(1), effective March 1, 1979, which now governs the award of attorney fees made pursuant to I.C. § 12–121.