MONMOUTH COUNTY BOARD OF SOCIAL SERVICES, PETITIONER-RESPONDENT, v. A.B., RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 2, 1984—Decided May 21, 1984.

Before Judges BISCHOFF, PETRELLA and BRODY.

*Robert B. Woods* argued the cause for appellant.

*Dennis J. Conklin,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Deborah T. Poritz,* Deputy Attorney General, of counsel; *Dennis J. Conklin* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

Appellant's average weekly gross wages in September 1982 were $100.40. She and her daughter then comprised an "eligible unit" entitled to receive Aid to Families With Dependent Children (AFDC) so long as her monthly wages did not exceed $410. A unit must establish its eligibility every month based, among other things, on income received in that month (the budget month). Because appellant had five weekly paydays that September, her unit was rendered ineligible for an AFDC payment in November (the payment month).

An eligible unit is also eligible for Medicaid benefits in each month that an AFDC payment is made. If AFDC assistance is "terminated," the unit remains eligible for four additional months of Medicaid.[1] In November 1982 appellant's daughter was stricken with meningitis. During that month she incurred $3,722.56 medical expenses for the child's hospitalization and treatment. The Monmouth County Board of Social Services (the Board) denied her Medicaid assistance in paying these bills by ruling that the unit's AFDC eligibility was only "suspended" in November and not "terminated." An administrative law judge recommended reversal but the Board determination was affirmed by the Director of the Division of Public Welfare (the Director). We reverse.

A state that participates in an AFDC program must comply with federal statutes and federal regulations. A state regulation that conflicts with a federal standard is invalid under the supremacy clause. *Carleson v. Remillard,* 406 *U.S.* 598, 92 *S.Ct.* 1932, 32 *L.Ed.*2d 352 (1972). Our legislature authorized the Commissioner of the New Jersey Department of Human Services (the Commissioner) to issue whatever regulations may be necessary "to secure for the State of New Jersey the maximum Federal financial participation that is available with

---

[1]There are exceptions not pertinent here.

respect to a program of aid to families with dependent children...." *N.J.S.A.* 44:10-3.

■ We must therefore begin with the pertinent federal statutes and regulations. The present problem originated when Congress adopted the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97-35, 95 Stat. 357, in August 1981. One of the purposes of that Act was to compel states to keep a closer tab on the eligibility of AFDC recipients. To accomplish this, the Act amended 42 *U.S.C.* § 602 to require for the first time that a monthly report be made updating each unit's status with respect to eligibility criteria. In response to the data in the report, the state must "take prompt action to adjust the amount of assistance payable, as may be appropriate...." 42 *U.S.C.* § 602(a)(14)(B).

Because this new procedure also calls for the eligible unit's income to be measured on a monthly cash basis, the income in a five-payday month will be more than that of the previous month. This increase in monthly income can render the unit ineligible for a month even though there has been no increase in weekly pay. These periodic reductions in assistance tend to be offset over time by the higher level of assistance rendered in four-payday months.

To avoid the administrative burden of terminating a unit every five-payday month and then processing the same unit as a new applicant a month later, the federal Department of Health & Human Services (the federal Department) revised one of its regulations effective October 1, 1981 to give states the option to "suspend" rather than "terminate" assistance in those instances where it is reasonably certain that the income rendering the unit ineligible will not recur the following month. That regulation, 45 *C.F.R.* § 233.34(d), reads as follows:

(d) A State may suspend, rather than terminate, assistance when:

(1) the agency has knowledge of, or reason to believe that ineligibility would be only for one payment month; and

(2) ineligibility for that one payment month was caused by income or other circumstances in the corresponding budget month.

The federal Department established the category of suspension solely as a matter of administrative convenience. It so stated in official comments to the 45 *C.F.R.* § 233.34(d) revision:

[Suspension] avoids a delay in payment that would result if the family was required to reapply. Furthermore, it facilitates the administration of retrospective budgeting.

. . . .

[T]here are convincing administrative reasons for suspending recipients whenever ineligibility for only one month occurs and § 233.34(d) is revised to authorize such actions. [47 *Fed.Reg.* 5666 (Feb. 5, 1982)]

New Jersey has accepted the option to "suspend" rather than "terminate" assistance when ineligibility is likely to be for only one month:

[*N.J.A.C.*] 10:90–4.5 *Suspension*

(a) The CWA shall suspend, rather than terminate, assistance for a payment month when:

1. The CWA has knowledge, or reason to believe, that ineligibility would exist for one payment month only; and

2. Ineligibility for that one payment month was caused by income or other circumstances in the corresponding budget month.

(b) Accordingly, the CWA shall suspend assistance for a payment month when ineligibility for that one payment month was caused by a regular and periodic extra paycheck received in the corresponding budget month from a recurring income source. The CWA may also suspend assistance when one or more of these regular checks from a recurring income source increased due to a ·temporary (one-month) increase in hours worked or rate paid, *e.g.*, overtime.

Years before Congress first required monthly reporting, it made Medicaid a component of AFDC benefits. A statutory feature of Medicaid, effective January 1, 1974, is its continuance "for 4 calendar months beginning with the month in which such family became ineligible for [AFDC assistance] because of income ... limitations...." 42 *U.S.C.* § 1396a(e)(1).[2]

A federal regulation regarding this statute was first promulgated September 29, 1978. It reads in pertinent part:

---

[2]Additional criteria for entitlement, not pertinent here, have been omitted.

*Families terminated from AFDC because of increased earnings or hours of employment.*

(a) If a family loses AFDC solely because of increased income from employment ... the [state] agency must continue to provide Medicaid for 4 months to all members of the family.... [42 *C.F.R.* § 435.112]

Although the title of the regulation refers to families "terminated" rather than families "terminated or suspended," it must be recalled that there was no suspension category when the regulation was adopted. The substance of 42 *C.F.R.* § 435.112 was incorporated into *N.J.A.C.* 10:81–8.22(b) which reads in pertinent part as follows:

(b) *Extension of Medicaid benefits:* When an AFDC ... family loses eligibility for money payment due to increased earnings from or increased hours of employment, Medicaid eligibility continues for a period of four months beginning with the month in which the family is no longer eligible for an AFDC money payment....

Drawing a substantive distinction between "termination" and "suspension," the Commissioner issued *N.J.A.C.* 10:90–4.5(d) which provides in part:

The eligible unit will lose entitlement to Medicaid coverage for the payment month of suspension.

The Director relied on that regulation in affirming the action taken by the Board.

There is no warrant for the Commissioner to use an optional category of administrative convenience to thwart the intent of Congress that Medicaid be continued for four months after a "family became ineligible for [AFDC] aid ... because of income ... limitations...." 42 *U.S.C.* § 1396a(e)(1). Appellant and her daughter were entitled to Medicaid assistance in November 1982 regardless of whether their AFDC ineligibility "because of income limitations" resulted in a "termination" or a "suspension." *N.J.A.C.* 10:90–4.5(d) must yield to the mandate of the federal statute.

The Board has brought to our attention a letter dated November 8, 1982 sent to the Director of Medical Assistance, New

Jersey Department of Human Services, by the Associate Regional Administrator of Region II in the Division of Program Operations of the Health Care Financing Administration in the federal Department. The letter states that it was written "in response to a telephone inquiry" from someone in the New Jersey Division of Public Welfare. In the letter the Associate Administrator offers the view that a family suspended from receiving AFDC assistance because of a five-payday month "would also not qualify for continued Medicaid benefits under 42 CFR 435.112 as the extra pay period is not considered an increase in income from employment...." There is no further discussion of the point.

We have not been advised whether this letter is to be taken as an authoritative judgment of the federal Department. Assuming it is, we are not bound by it although it is entitled to respect. "The weight of such a judgment ... will depend upon the thoroughness evident in its consideration, the validity of its reasoning ... and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 *U.S.* 134, 140, 65 *S.Ct.* 161, 164, 89 *L.Ed.* 124, 129 (1944). Based on these factors, we respectfully decline to follow the Associate Administrator's opinion. It would be strikingly ironic to render appellant and her daughter ineligible for AFDC because a federal statute deems the extra pay period an increase in monthly, though not weekly, income from employment yet deny them Medicaid guaranteed by federal statute to units rendered ineligible for AFDC, because "the extra pay period is not considered an increase in [weekly] income from employment."

Reversed and remanded to the Monmouth County Board of Social Services for further proceedings consistent with this opinion.