**Michele GRAHAM, on Behalf of her minor children; and Dorrie Pryor, on Behalf of her minor children, Plaintiffs,**

v.

**Otis BOWEN, Secretary of the Department of Health and Human Resources of the United States; Cesar A. Perales, Commissioner of New York State Social Services; and Louis Scozzafava, Commissioner of Niagara County Social Services, Defendants.**

No. CIV–88–119E.

United States District Court,
W.D. New York.

Feb. 8, 1989.

Dennis Clary, Niagara Co. Legal Aid, Niagara Falls, N.Y., for plaintiffs.

Martin J. Littlefield, Asst. U.S. Atty., Paul F. McCarthy, Asst. Atty. Gen., Buffalo, N.Y., Robert E. Ziske, Niagara Co. Social Services, Lockport, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiffs in this action are mothers, acting on behalf of their dependent children, whose households were suspended from receiving benefits pursuant to the Aid to Families with Dependent Children ("AFDC") program, 42 U.S.C. § 601 *et seq.* Individual adult members of each household had received lump-sum personal injury awards which were held to have rendered the entire households ineligible for AFDC assistance during a period of months, ending in January 1989.

The Complaint, as presently drafted, alleges that the defendants violated the plaintiffs' rights under the AFDC enactment and under the equal protection guarantees of the Constitution. This Court granted plaintiffs a preliminary injunction February 12, 1988 pending the outcome in the United States Supreme Court of an analagous case under the federal food stamp program involving the denial of government benefits to an entire household because of the "misconduct" of an individual member. The plaintiff in that case, *Lyng v. International Union, UAW ("Lyng")*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988)—which was decided March 23rd—had similarly challenged the government program on equal protection grounds.

After the ruling in favor of the government defendant on the equal protection claim in *Lyng*, defendants Perales and Scozzafava moved to dismiss the Complaint pursuant to rule 12 of the Federal Rules of Civil Procedure. Defendant Bowen also moved for summary judgment of dismissal.

Subsequently, the plaintiffs moved to amend the Complaint so as to provide an additional cause of action—*viz.*, that the relevant AFDC provision, 42 U.S.C. § 602(a)(17), effectively operates as a bill of attainder in violation of Article I, Section 9 of the Constitution.

The various parties have agreed that these motions are "inter-related" and should be considered by this Court simultaneously and that all pleadings and supporting memoranda have been submitted.[1]

---

1. Letter to this Court, dated May 26, 1988, from Assistant United States Attorney Martin J. Little-

Therefore the motions to dismiss will be deemed to relate to all of plaintiffs' causes of action, including that additional cause stated in the proposed Amended Complaint.

■ Leave of court should be "freely given" for amendment of pleadings whenever such leave is required by the interests of justice. Fed.R.Civ.P. rule 15(a). Absent specific reason, such as undue delay, or dilatory motive on a movant's part, failure to grant leave to amend constitutes an abuse of discretion by a district court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The introduction of an additional cause of action in an amended complaint is *not* a sufficient specific reason to deny a motion to amend. 3 Moore's Federal Practice, ¶ 15.08[2] (2d ed. 1987). Inasmuch as the plaintiffs' attorney has affixed an affidavit to the motion affirming the absence of bad faith or dilatory tactic in bringing the motion and as there is no evidence to the contrary before this Court, the plaintiffs' motion to amend the Complaint so as to state an additional cause of action will be granted.

Under Fed.R.Civ.P. rule 12(b)(6), a cause of action may be dismissed for failure to state a claim if it "appears beyond a doubt" that no set of facts could be proved which would entitle the plaintiff to relief thereon. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Additionally, judgment on the pleadings is available under rule 12(c) if the moving party is clearly entitled to judgment, notwithstanding that the opposing party's factual assertions must be accepted as true. 2A Moore's Federal Practice ¶ 12.15. This action is entirely centered upon questions of law. Hence, dismissal is appropriate if, upon the facts alleged in the Amended Complaint, the plaintiffs are not entitled to relief.

As noted above, this Court granted the plaintiffs a preliminary injunction pending the outcome of *Lyng*. Therein "the Food Stamp Act," 7 U.S.C. §§ 2011 *et seq.*, as amended in 1981, was challenged on equal protection grounds insofar as it precludes a household from becoming eligible for food stamps or for receiving an increased allotment thereof when an individual household member sustains decreased income due to being on strike from his job. The trial court had characterized this aspect of the law as impermissibly placing the onus of a parent's misconduct on a dependent child in contravention of "fundamental conceptions of justice." *United Auto., Aero. & Agr. Implement Workers v. Lyng*, 648 F.Supp. 1234, 1240 (D.D.C.1986).

The highest court, on direct appeal, reversed and such ruling is dispositive of the instant equal protection claim. Although *Lyng* dealt with the food stamp program rather than with the AFDC program, the equal protection analysis employed therein remains applicable. Absent a fundamental interest or a protected class, the standard of review is "deferential"—*i.e.*, whether a statutory scheme is "rationally related to a legitimate governmental interest." *Lyng*, 108 S.Ct. at 1192.

■ The plaintiffs argue that such ruling may be distinguished as implicating no fundamental interest, whereas the AFDC scheme at issue in this case deprives ineligible families of necessities, creating the likelihood of children being committed to foster homes and thus interfering with the fundamental right of these families to remain intact. Thereby, it is argued, a heightened standard of review is required.

However, to the extent that the AFDC program as established may increase the likelihood of a fracturing of some families it operates no differently than the food stamp program the challenge to which was before the United States Supreme Court. Any distinction is quantitative and not qualitative. The record in *Lyng* "bears witness" to the hardship to families occasioned by the withholding of food stamps from households with a striking member.[2]

---

field, confirming conversations held on the same date among Littlefield, Assistant State Attorney General Paul F. McCarthy, Assistant Niagara County Attorney Robert Ziske and Niagara County Legal Aid attorney Dennis A. Clary.

**2.** One striking worker whose family was denied food stamps testified: "Our children were in

*Lyng,* at 1196 & fn. 3 (Marshall, J. dissenting). Notwithstanding such unfortunate occurrences, the majority in *Lyng* found "no substantial impact on any fundamental interest." The Court stated that:

"Whenever an individual takes any action that hampers his or her ability to meet the [food stamp] program's eligibility requirements * * *, the entire household suffers accordingly. We have never questioned the constitutionality [of this result]. * * * That aspect of the program does not violate the Constitution any more so today." *Id.* at 1191–1192.

■ Analagously, AFDC provisions which visit the "sins" of the parents on their dependent children are also constitutionally valid under the Fourteenth Amendment and the equal protection component of the Fifth Amendment's due process clause. The government has a legitimate interest in protecting the fiscal integrity of its AFDC program. *Lyng,* at 1193; *Ohio Bureau of Employment Service v. Hodory,* 431 U.S. 471, 493, 97 S.Ct. 1898, 1910, 52 L.Ed.2d 513 (1977). Requiring that a household (a member of which receives income in excess of the household's applicable standard of need) apportion its excess income (instead of government benefits) toward household expenses is rationally related to that legitimate interest. Therefore, the plaintiffs' first cause of action will be dismissed as to each of the defendants.

■ The plaintiffs' second cause of action maintains that defendant Perales has adopted regulations which do not conform to the federal requirements under the AFDC program. Specifically, it is contended that New York unilaterally imposes an improperly restrictive condition upon access to AFDC funds by a household a member of which receives spendable lump-sum income.

Under federal law, AFDC recipient-households are suspended from receiving benefits for a period of months if any one of the household members obtains income in a lump sum in excess of the household's applicable state standard of need. 42 U.S.C. § 602(a)(17)(A). The number of months of suspension is determined via a formula which divides the lump-sum income by the applicable monthly standard of need. *Ibid.; Lukhard v. Reed,* 481 U.S. 368, 372, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987). Personal injury awards, such as those received by members of the plaintiffs' families in this action, may be treated as income for purposes of this statute. *Ibid.*

As amended in 1984, there are three statutory limitations upon the federal lump-sum rule. At issue here is the meaning of the second exception: A state participating in AFDC distribution has the option to recalculate prospectively the period of ineligibility with respect to income which becomes "unavailable to members of the family for reasons that were beyond the control of such members." 42 U.S.C. § 602(a)(17)(B)(ii). New York has promulgated regulations pursuant to its option to shorten the period of ineligibility under such circumstances. *See* 18 NYCRR § 352.29(h). Such regulations define the phrase "beyond the control" to relate to events or circumstances unforeseen or unpreventable by the entire "family." *Ibid.*

The plaintiffs contend that New York's regulations invalidly constrict AFDC eligibility as provided for under section 602(a)(17)(B)(ii) of the federal enactment. In the plaintiffs' view, the phrase "beyond the control," as used in that section refers to individual members of a family receiving assistance. Therefore, they say that only those members of an AFDC family actually receiving spendable lump-sum income are ineligible for benefits and not the entire household. The argument is that disposition of the income is beyond the control of the other family members, and they remain eligible for benefits.

This contention is without merit. The language of the 1984 amendment to section 602(a)(17) plainly provides that the States have the "option" to recalculate ineligibility under the specified circumstances—an op-

danger of not having enough to eat. Therefore, we had to send them to live with their grandparents * * * so they would get enough nourish-

ment." *Lyng,* 108 S.Ct. at 1196 fn. 3 (Marshall, J. dissenting).

tion to liberalize, it should be stressed, rather than to constrict federal conditions upon eligibility. Additionally, regulations promulgated by the United States Department of Health and Human Services leave to the States the development of definitions as to the "unavailability" of the lump-sum income and as to the reasons such unavailability might be considered "beyond the control" of family members. 45 C.F.R. § 233.20(a)(3)(ii)(F)(3). Impliedly, then, a State need not exercise its option in the manner or to the extent most amenable to particular AFDC recipients.

None of the cases which the plaintiffs cite [3] in support of their contention that States cannot impose conditions upon eligibility for AFDC benefits involves an option similar to that at issue here. A State's exercise of an expressly granted option to liberalize federally-imposed conditions upon eligibility for benefits is distinguishable from a state's unilateral imposition of restrictive conditions upon such eligibility. Consequently, the plaintiffs' second cause of action, relating to defendant Perales as Commissioner of New York State Social Services, will also be dismissed.

The Amended Complaint, which this Court as abovenoted has agreed to entertain, provides as an additional cause of action the allegation that 42 U.S.C. § 602(a)(17) operates as a bill of attainder in violation of Article I, Section 9 of the Constitution. This claim is also baseless.

■ A bill of attainder involves an identifiable individual or group singled out for punishment without the protections of a judicial trial. *Selective Service v. Minn. Public Int. Gp.*, 468 U.S. 841, 846–847, 104 S.Ct. 3348, 3351–52, 82 L.Ed.2d 632 (1984); *Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977). The key feature is "punishment." In determining whether a

governmental action is punitive in nature, courts must inquire whether the statute (1) is of a type traditionally considered punitive, (2) furthers nonpunitive legislative purposes, and (3) evinces a congressional intent to punish. *Selective Service v. Minn. Public Int. Gp., supra* 468 U.S. at 852, 104 S.Ct. at 3355.

■ None of these inquiries supports a conclusion that section 602(a)(17) is punitive in nature. Suspension of welfare benefits on a pro-rated basis for a period calculated by the amount of outside income can hardly be considered a traditional form of punishment akin to imprisonment, banishment, or confiscation of property. *See Nixon v. Administrator of General Services, supra,* 433 U.S. at 474, 97 S.Ct. at 2806. Moreover, the suspension provisions of the section, as already noted, further the government's legitimate, nonpunitive interest in a fiscally-responsible allocation of governmental resources.

Finally, the legislative history to section 602(a)(17) supports the conclusion that the lump-sum income provision was not intended for punitive purposes but instead as a mechanism for more efficient management of the AFDC program.[4] *See Lukhard v. Reed, supra,* 481 U.S. at 372, 107 S.Ct. at 1810. Prior to 1981 and in the absence of the lump-sum rule of section 602(a)(17), AFDC recipients had the incentive to spend lump-sum income rapidly and in the month earned or otherwise recieved (rather than apply it to their on-going needs) so as to regain eligibility in immediately forthcoming months. Apportionment of the lump sum via suspension of benefits was designed "to solve this problem." *Ibid.*

Inasmuch as section 602(a)(17) does not inflict punishment, it does not constitute a bill of attainder and the plaintiffs' third cause of action must therefore be dismissed as to each of the defendants.

---

3. *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *Carleson v. Romilliard,* 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). Plaintiffs' Memorandum in Opposition to Motion to Dismiss, at 10.

4. Subsection (17) was added as part of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. 97–35, 95 Stat. 845. It was amended in 1984 to provide the States with a recalculation option. Pub.L. 98–369, § 2632(a).

Accordingly, it is hereby ORDERED that the plaintiffs' motion to amend their Complaint is granted, that such amended pleading is deemed to have been filed and served and attacked by the defendants' motions for summary judgment, and that each of the defendants' motions to dismiss the Amended Complaint is granted.