157 N.J. Super. 251 (1978)
384 A.2d 899
ADELE SHANNON, INDIVIDUALLY ON BEHALF OF HERSELF AND ON BEHALF OF HER CHILDREN, APPELLANT,
v.
DEPARTMENT OF HUMAN SERVICES, ANN KLEIN, COMMISSIONER: DIVISION OF PUBLIC WELFARE, G. THOMAS RITI, DIRECTOR, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1978.
Decided March 13, 1978.
*252 Before Judges ALLCORN, MORGAN and HORN.
*253 Mr. Paul V. Mullin argued the cause for appellant (Mr. Melville D. Miller, Jr., Administrator, Middlesex County Legal Services; Mr. Nolan B. Dawkins, of counsel and on the brief).
Mr. Richard M. Hluchan, Deputy Attorney General, argued the cause for respondents (Mr. John Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey, and Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
PER CURIAM.
This is an appeal from a determination of the Department of Human Services, Division of Public Welfare, reducing appellant's AFDC grant from $310 a month which she had been receiving to $178 a month. Originally, the Department sought to reduce her grant on the ground that the "father [of one of her children] Morris Taggart is living in your home thus causing a change in the eligible unit [per] 111.2 ASH * * *." The foregoing language is taken from the notice of November 12, 1976 which advised appellant of the proposed reduction and the reason therefor. Appellant responded with a request for a fair hearing on the issue raised and one was held on December 20, 1976. At the hearing the agency's proofs all related to the matter in issue, Morris Taggart's alleged residence with appellant and her children. They were:
(1) all of Taggart's mail is received at Ms. Shannon's home;
(2) the utilities were billed in Taggart's name;
(3) the lease upon Ms. Shannon's home was taken out in Taggart's name;
(4) Taggart's driver's license and automobile registration listed Ms. Shannon's address as Taggart's;
(5) a letter sent to Taggart's supposed East Orange address was returned with no forwarding address.
Appellant countered this evidence with an explanation that the utility bills were in Taggart's name because she had outstanding *254 and unpaid bills in her name; her address was on Taggart's automobile registration because insurance rates in Perth Amboy were lower than they were in East Orange where Taggart lived with his sister. Appellant testified that although Taggart visited her often, he did not live with her but with his sister from whom he rented a room. Although his residence with his sister was confirmed by one of appellant's friends, the hearing officer recommended that the reduction be confirmed, finding that Taggart did live with appellant.
In exceptions to the hearing officer's conclusions contained in a letter of January 21, 1977, other evidence was referred to, including letters from appellant's landlord and a rent receipt from Taggart's sister showing that he did rent a room from her. A letter from the East Orange Post Office also tended to demonstrate that Taggart lived in that municipality and not with appellant.
The Director of the New Jersey Division of Public Welfare concluded on the basis of all evidence submitted that Taggart did not live with appellant. Nonetheless, in light of appellant's testimony during the hearing that "Mr. T. visits frequently, his child cannot be considered as deprived of parental care [and] support" by reason of the "continued absence" of a parent "in accord with the provisions of Public Assistance Manual 2533." Appellant's grant was, accordingly, reduced to "$207 based on a household of three and an eligible unit of two persons [excluding Mr. T.'s child]."
Appellant raises several substantive points of argument, all of which, in our view, lack merit. First, appellant contends that the agency's interpretation of the term "continued absence" as excluding frequent visitation by a purportedly "absent" parent raised an irrebuttable and improper presumption that the child is being supported by the visiting parent. In making this argument appellant discloses a fundamental misconception concerning the purpose and scope of the federally-funded AFDC assistance program. *255 Although the financial need of a child is an essential condition to eligibility under the program, need alone is insufficient. The protection afforded by the AFDC program extends to children who are found to be in need of financial assistance and who, while living in New Jersey, have "been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." N.J.S.A. 44:10-1(c). Hence, the program was designed to protect a clearly distinguishable group of children in need of financial assistance, those lacking a parent through death, physical or mental incapacity or continued absence. See, King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). This limitation on those eligible for benefits thereunder is emphasized by the deletion in N.J.S.A. 44:10-1(c)(1) of a provision extending protection to a child living with both parents where the father is unemployed or the earnings of both parents are insufficient.[1] Clearly, under the law pertinent to the present controversy, eligibility for benefits was determined not only by financial need but by the absence of a parent whether by reason of death, incapacity or continued absence, this latter condition independent of financial support being needed or provided.
Hence, the irrebuttable presumption of which appellant complains neither exists, nor was invoked, nor was involved. The agency did not presume that Taggart supported the child because he visited. It only determined that his visits negated one condition for eligibility under the AFDC program, continued absence. Had Taggart actually lived with appellant and his child, his unemployment would have precluded a contribution to the child's financial resources; the child would have been just as needy with Taggart living *256 at home. Nonetheless, and under the clear wording of the act as it existed during the time pertinent to this appeal, appellant would have been ineligible because one parent was not continuously absent. Limiting the scope of the AFDC program to those coming within the terms of its protection, Congress envisioned that programs of "work relief" and other programs affording financial assistance would alleviate the plight of those needy children not covered by the AFDC program. King v. Smith, supra.
Appellant's remaining substantive contentions, flowing from the above, are similarly without merit. Section 2533 of the Public Assistance Manual, the regulation defining "continued absence," is almost identical in content to the federal regulation found in 45 C.F.R. § 233.90(c)(iii) and hence cannot realistically be viewed as in violation of federal law and the Supremacy Clause of the United States Constitution. Nor is the regulation invalid as undermining the public policy of this State to foster parent-child relationships through visitation by the noncustodial parent. Although it may or may not have that effect in practice, such is not a ground for invalidation. Courts do not pass on the essential wisdom of legislative action. Hudson County News Co. v. Sills, 41 N.J. 220, 229 (1963); Grand Union Co. v. Sills, 43 N.J. 390, 403 (1964). Nor does this regulation or the legislation it implements violate equal protection guarantees. As noted in N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581 (1967):
Equal protection is not denied because a regulatory statute might have gone farther than it did, or might have included some persons or classes of persons who were excluded. Regulatory need in a particular field may appear to the legislative mind in different dimensions and proportions; as more acute in one area than in another. Consequently the reform may proceed one step at a time, addressing itself to the aspect of the problem which seems the most pressing. The Legislature may feel that a sufficiently identifiable group or class of people operating partly or wholly in the field under consideration and already subject to some regulation does not present the same problem as those seeking to practice in the field without having met *257 any publicly imposed standards of competence. In short, equal protection does not demand immediate logical tidiness; nor is it violated because the legislation as enacted does not bring about the full reform or result intended to be produced. In an area of many competing pressures the constitution is satisfied if the Legislature, in responding to what it conceived to be living facts calling for regulation, did not disregard reasons in drawing its lines. That those lines might have been drawn more suitably in light of the whole problem is not a matter for judicial re-examination. Classification is a perennial and difficult problem, capable of no doctrinaire solution. Basically the solution resides in the legislative domain and the judiciary will not intrude unless the classes established for separate treatment represent invidious discrimination, that is, treatment which has no rational basis in relation to the specific objective of the regulatory legislation. [at 602]
Although we hold appellant's substantive arguments to be without merit, we nonetheless conclude that the notice and the hearing held pursuant thereto were deficient. The notice which resulted in the hearing advised appellant that her grant was being reduced because Taggart, the father of one of her children, was living with her. It was with respect to that issue, whether Taggart was living with her, that evidence was adduced both by the agency and by appellant. Indeed, the hearing concluded with the hearing officer finding that Taggart did live with her. It was only during the final administrative appellate process that a new issue emerged, whether Taggart visited her with sufficient frequency to deny eligibility on a finding there was not "continued absence" of a parent. That issue was resolved against appellant without evidence being purposefully adduced with respect to it or without hearing any argument thereon. In our view, fundamental fairness, as well as administrative rule PAM 6312 required that appellant be advised of the new issue under consideration, be afforded the opportunity of offering evidence thereon, and be permitted to direct argument to that point. Such opportunity was foreclosed because the issue emerged and was resolved without appellant's knowledge or participation.
*258 We, therefore, vacate the determination appealed from and remand to the Division with instructions to hold a hearing concerning the frequency and length of Taggart's visit to the Shannon household and concerning any other matter deemed relevant to a determination as to whether Taggart's absence from the Shannon household was "continued" within the meaning of PAM 2533. Resumption of payment of the difference between what appellant claims and what she has been receiving by way of the reduced grant shall await disposition of the hearing on remand and be in accordance therewith.
Reversed and remanded for further proceedings consistent with the mandate of this opinion. We do not retain jurisdiction.
NOTES
[1] After plaintiff filed her claim N.J.S.A. 44:10-1 was amended to provide funds for children living with both parents when the father is unemployed or the family has insufficient support. L. 1977, c. 127, § 1.