191 N.J. Super. 228 (1983)
465 A.2d 1226
ARLENE SIMONE, PETITIONER-APPELLANT,
v.
DIVISION OF PUBLIC WELFARE, DEPARTMENT OF HUMAN SERVICES OF THE STATE OF NEW JERSEY & BERGEN COUNTY WELFARE BOARD, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1982.
Decided February 17, 1983.
*230 Before Judges FRITZ, JOELSON and PETRELLA.
Richard S. Semel, Bergen County Legal Services, argued the cause for appellant.
Robert M. Jaworski, Deputy Attorney General, argued the cause for respondent Department of Human Services, Division of Public Welfare (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Robert M. Jaworski, on the brief).
Stephen M. Latimer argued the cause for amicus curiae Legal Services of New Jersey (Legal Services of New Jersey, by Melville D. Miller and Stephen M. Latimer, attorneys).
FRITZ, P.J.A.D.
This is an appeal by Arlene Simone, a recipient of benefits under the Aid to Families with Dependent Children (AFDC) Program, following a reduction of those benefits by the Bergen County Welfare Board (Board) upon its determination "that there is no lack of parental support as Mr. Simone [appellant's husband] lives in the same house." At appellant's request a "fair hearing" followed, before an administrative law judge. Appellant testified at length as did a friend of hers. The Bergen County Welfare Board was actively present and participated but, significantly enough, produced no witnesses or evidence other than to undertake examination of Mrs. Simone. The case for the Board was succinctly and forthrightly stated by counsel for the Board at the conclusion of Mrs. Simone's testimony. He said:
Mr. Simone lives at 438 Grove Street. That is what we're basing our case on. The lack of parental deprivation. Continued absence of the parent from the home constitutes deprivation of parental support or care. Judge, our case is ipso facto the fact that he lives in the same building with her is by its very nature, uh, a lack of deprivation.
The uncontroverted testimony of Mrs. Simone reported that she and Mr. Simone were separated, but not divorced because "I don't have any time," and "He has no money"; that "He left *231 me"; that "we don't live together"; that while Mr. Simone lives "in the same building," he never sees the children and never visits the home; that this "building" is in reality a five-family house, and that Mr. Simone lives with his mother and father on a floor above that on which she lives with the children. It would also appear without contradiction that after the separation, Mr. Simone left the premises entirely, "living with a friend someplace," and that when he returned to the premises he did not move back in with appellant nor has he lived there at any time "since the first time he left." None of his clothes remain in Mrs. Simone's apartment, he never takes the children to school, he furnishes neither Mrs. Simone nor any of the children "clothing or shoes or food or candy or pocket money." There is evidence from which it can be most reasonably inferred that an attempt at reconciliation by Mrs. Simone on an earlier separation failed, in part at least, because Mrs. Simone did not "want a beating every time."
Inquiry of Mrs. Simone by counsel for the Board (Mr. Williams) appears instructive:
Q Have you asked Mr. Simone to pay attention to the children?
MR. SEMEL [counsel for Mrs. Simone]: I object. That's not part of the case.
MR. WILLIAMS: All right. He asked the question has he paid any attention to the children.
A No, he left me.
Q Mrs. Simone, have you asked him to pay attention to the children?
A No. Cause I've been looking for rooms, but they want one month's security, some of them want real estate fees. It's hard for me to move. So, the landlord is trying to buy another house. She said the best she can do is give me the rooms over there, but right now the interest rate is too high and she can't. So I have to stick it out there. So, I go by my mother's as much as I can because there's too much trouble over there and now I have trouble with you.
The administrative law judge reversed the Board, concluding that "pursuant to N.J.A.C. 10:81-2.7(d), that petitioner's spouse is absent from the home and, therefore, the family continues to have eligibility for AFDC and FS [food stamps] based on deprivation of parental support and care." This conclusion was based on the following express findings:

*232 1. Petitioner lives in an apartment in the same five-family building in which her spouse's parents live.
2. Petitioner's spouse is currently living in his parents' apartment.
3. Evidence presented by the agency is not sufficient to establish that petitioner's spouse is living in petitioner's home or that petitioner's spouse is functioning as a provider of maintenance, physical care or guidance for the children.
Following the filing of exceptions by both parties,[1] the Director of the Division of Public Welfare disagreed with the administrative law judge and affirmed the Board. He did this first by a "final decision" in which he found that "the father is a resident of the same dwelling unit as the eligible unit" and rejected the "petitioner's assertion that the father provides no financial support or has no contact with the eligible unit" on the basis that this "is not evidence of continued absence within the meaning of the regulation." A telephone call from counsel for Mrs. Simone brought an acknowledgment that the "final decision is defective and requires amendment and reissuance." An "amended decision" eventuated. In this the director recognized, implicitly at least, that Mr. Simone did not live with Mrs. Simone and that, consistently with Mrs. Simone's testimony, she "resides in a multi-family building which is also the residence of her spouse." In apparent contravention of the findings of the administrative law judge, who had an opportunity to see and hear Mrs. Simone during her testimony, the director concluded, "The petitioner's contention regarding absence of contact between the father and the eligible unit is not accepted as credible and the assertion that her spouse provides no financial support is not evidence of deprivation within the meaning of the regulation." We are satisfied that the director erred in this determination and so we reverse.
*233 Although we view the matter as principally one of a determination of fact, we are also convinced that the director was in error in his interpretation of that which constitutes a "deprivation of parental support or care," N.J.A.C. 10:81-2.7(d), sufficient to warrant eligibility for the benefits. The director believed eligibility to be determined in this respect on the basis of "whether or not a parent has opportunity to exercise parental responsibility irrespective of the parent's physical presence in the home." (Emphasis supplied.) Such a broad definition of the absence of deprivation flies in the face of the precise language of N.J.A.C. 10:81-2.7(d) which expressly directs that continued absence of the parent from the home constitutes deprivation of parental support or care, without any qualification respecting the opportunity of that parent to exercise responsibility regardless of the absence. The regulation then goes on to define what constitutes continued absence. It does this in terms of such an absence as "interrupts or terminates the parent's functioning as a provider of maintenance, physical care or guidance for the child, and the known or indefinite duration of the absence precludes the parent's performance of his/her function in planning for the present support or care of the child."
The question thus becomes a factual one of whether Mr. Simone's conceded absence from the apartment in which Mrs. Simone lives with the children has been such that it has interrupted or terminated Mr. Simone's functioning as that function is described in the regulation. It is to be observed that this regulation may explicate but is not at all inconsistent with 42 U.S.C.A. § 606(a)(1) or N.J.S.A. 44:10-1(c)(1), each of which merely speaks in terms of "continued absence from the home," in defining the dependent child.[2]
*234 It appears crystal clear that whatever purpose it may serve in helping determine the factual issues appropriate to the regulation, the opportunity of an absent parent to exercise parental responsibility will not by itself defeat eligibility. The critical fact question is whether the absence "interrupts or terminates the parent's functioning as a provider of maintenance, physical care or guidance for the child, and the known or indefinite duration of the absence precludes the parent's performance of his/her function in planning for the present support or care of the child." It is the resolution of this factual issue in the circumstances before us which is determinative.
With respect to the "amended decision" here under review, we note at the outset that one and only one finding of fact appears in the determination, and that is that the unemployed petitioner resides in a multifamily building which is also the residence of her spouse, the father of two of the children. Beyond this we have nothing at all by way of findings of fact. We have only the conclusion of the director that the petitioner was incredible in respect of the fact as to absence of contact and irrelevantly assertive in the area of the absence of financial *235 support. Thus we have no way to judge the soundness of the determination by the director that petitioner fabricated nor to measure the basis for his necessarily implied conclusion that the absence of Mr. Simone did not in fact interrupt or terminate "the parent's functioning as a provider of maintenance, physical care or guidance for the child," or preclude "the parent's performance of his/her function in planning for the present support or care of the child." If there were nothing more to the case than this, we would remand for findings of fact so we could measure the quality of the determination in terms of freedom from arbitrariness.
However, the record persuades us that such a remand is not necessary. We find no basis, other than speculation that proximity produces providing, to conclude that the uncontroverted testimony of Mrs. Simone is in fact a fabrication. In fact, we are satisfied to the contrary. Our conviction, apparently not shared by the director, that the written record has an undeniable ring of truth about it is buttressed by the more important consideration that the administrative law judge, who apparently felt as we do, had the opportunity to see and listen to Mrs. Simone.
Also of substantial significance is the fact that of the agencies in this matter responsible for the proper distribution of these public funds none believed it necessary to produce Mr. Simone in order to ascertain the truth of the matter.
All of this considered, it appears clearly that the only basis upon which the determination of the director can be sustained requires recognition of a conclusive presumption that residence in the same building, although in a different apartment, negates any interruption or termination of the parent's functioning as a provider. We are unwilling to indulge such a presumption.
The determination of the director is reversed and the determination of the administrative law judge is reinstated.
NOTES
[1] Counsel for Mrs. Simone did not, of course, challenge the result. Rather he excepted on the basis of his belief that "the decision in this matter does not go far enough in reporting and evaluating the action taken by the Bergen County Welfare Board." He concluded his exceptions by asserting his conviction that "[t]he Board's conduct in this case is reprehensible, and should be so categorized in the decision resulting from its action."
[2] The position of the federal authorities on the matter is informative. They do not even require an absence of contacts for a finding of "continued absence." The Attorney General, candidly and commendably, has provided us with an informational letter from the Assistant Regional Commissioner for Family Assistance of the Social Security Administration in the United States Department of Health & Human Services. It reads in its entirety:

In response to your request for an interpretation of 45 CFR 233.-90(c)(1)(iii), I am forwarding a copy of a memorandum to the Regional Commissioner, Region X, Seattle, which deals with the general issue of deprivation by reason of continued absence. I think that this will explain our present position on the question. It does not specifically address your question on "frequent visitation" by a parent who does not live in the home.
As the memorandum notes, the regulation does not require a total cessation of the parent's contact with his/her children for a finding of "continued absence." Therefore frequent visits, in and of themselves, do not negate a finding of deprivation by reason of absence. The criterion is whether the absence of the parent interrupts his/her functioning as a provider of maintenance, physical care or guidance and whether the duration of absence precludes the parent's performance of his/her function in planning for the present support or care of the child.
If I can be of further assistance, do not hesitate to call.