204 N.J. Super. 132 (1984)
497 A.2d 1258
IN THE MATTER OF KIMBERLY SOUDER, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 21, 1983.
Decided March 20, 1984.
*133 Before Judges FURMAN and DEIGHAN.
Camden Regional Legal Services, Inc., attorneys for appellant (Esther M. Canty, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent Department of Human Services, Division of Public Welfare (James J. Ciancia, Assistant Attorney General, of counsel; Robert M. Jaworski, Deputy Attorney General, on the brief).
*134 PER CURIAM.
This is an appeal from a final administrative decision of the Division of Public Welfare, Department of Human Services (Department), which affirmed the action of the Gloucester County Welfare Board (Board) in terminating appellant's benefits under the Aid to Families with Dependent Children (AFDC) program. Termination of the grant was based upon a determination by the Board that no parental deprivation such as required by N.J.A.C. 10:81-2.7(d) existed.
Appellant, Kimberly Souder, an unwed mother, and her son reside with her family. She received AFDC because the child was financially needy and deprived within the meaning of that program. She had been receiving $278 per month under AFDC-C. Appellant's benefits were terminated because in a telephone conversation with a representative of the Board on April 6, 1982 she told him that the child was visited by his father every day.
On April 7, 1982, appellant was notified by the Board that her monthly AFDC benefits of $278 would be terminated because "your child is visited by his father every day ... [so] that there is no absent parent [within the meaning of N.J.A.C. 10:81-2.7(d)]." In its termination letter it advised appellant that she could qualify for other types of public assistance if she married the father and lived with him or took up a joint residence with him as unmarried parents of the child.
Appellant requested a fair hearing and the matter was heard by an Administrative Law Judge (ALJ). At the hearing the Board took the position that because of the substantial contact by the father with the child, who was 13 months old at the time of redetermination, the child was "no longer deprived of parental support." Prior to the hearing appellant told the Board that she was engaged to the child's father but would not marry him until he obtained a better job. Subsequent to the hearing she advised the Board that she and the father were no longer engaged.
*135 At the time of the hearing the father was paying support of $15 per week pursuant to a court order. He was earning $3.50 an hour as a truck driver working seasonally only. The Board explained that married and unmarried parents were treated alike under AFDC and at the hearing suggested that appellant and the father reside together as a family unit so that they might qualify for assistance as a family. The Board assumed that because of the visitation the father was functioning as a parent. This was concluded even though the Board representative admitted that since the support was under a court order the father would be given the right of visitation.
At the hearing appellant stated that the father, who lived two blocks away from where she resided, visited the child for an hour each day to play with him. She denied that he had any control or say over the child's upbringing. She stated that she could not move in and live with the father because it would be against the father's religion. Appellant's family also was opposed to a "live in" relationship. This "live in" suggestion by the Board upset appellant's relationship with her family and interfered with the relationship with the child's father.
Based on this testimony the ALJ concluded that appellant's benefits were properly terminated. The ALJ found that: (1) the father paid $15 per week in support and these payments were current; (2) the father visited the child daily; and (3) the father and the appellant were having a "continuing relationship." He concluded that termination was proper because the child was "not deprived of parental support and care."
On this appeal we are required to determine whether, under the facts and circumstances of this case, appellant's AFDC benefits were properly terminated. For reasons set forth below we hold that the benefits were improperly terminated.
Appellant states that "[i]t has been well established that eligibility under the AFDC must be measured by federal standards." This, of course, is axiomatic. If a state AFDC regulation conflicts with a federal standard, that regulation is invalid *136 under the supremacy clause. Carleson v. Remillard, 406 U.S. 598, 600-603, 92 S.Ct. 1932, 1934-1935, 32 L.Ed.2d 352 (1972). If New Jersey disagrees with the manner in which the federal government has established eligibility criteria for AFDC and the manner in which these standards are applied, it must take its grievances to Congress, not apply those regulations in conformity with its own policy. King v. Smith, 392 U.S. 309, 333, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118 (1968). This State must conform its AFDC program to the federal scheme. Essex Cty. Welfare Bd. v. Dept. of Inst. and Agencies, 139 N.J. Super. 47, 50 (App.Div. 1976); see 42 U.S.C. § 601, et seq.
Appellant contends that the Department interprets and applies the State regulations so as to undermine the purpose and intent of the Social Security Act. She charges that the Department's test for determining whether there is continued absence of a parent is based merely on whether the opportunity to exercise parental responsibility exists.
This court has recently held, contrary to the Department's contention, that Eligibility for AFDC Benefits, N.J.A.C. 10:81-2.7(d), is not determined on the basis of whether an absent parent has the opportunity to exercise parental responsibility irrespective of the parent's physical presence in the home. Simone v. State, 191 N.J. Super. 228, 233 (App.Div. 1983). The regulation expressly directs that continued absence of the parent from the home constitutes deprivation of parental support or care, without any qualification respecting the opportunity of the parent to exercise responsibility regardless of the absence. Ibid.
The Department contends that the narrow issue is whether the child is "deprived" within the meaning of the AFDC legislation. It concludes that this court's review is limited to ascertaining whether the agency decision is based upon sufficient credible evidence in the record as a whole. "Since the father lives nearby and visits frequently to play with the child," it maintains that "he can be counted upon should she or the child *137 need his assistance for any reason." The father's "daily presence in the home coupled with the care and support he has shown to the child ... negate a finding either that his absence interrupts his role as a provider of `maintenance, physical care, or guidance' for the child or renders him unable to plan for the child's support or care."
Initially, it is necessary to review the applicable statutes and regulations. N.J.A.C. 10:81-1.11(a)(1) provides financial assistance for children and their parents with whom they are living when they are financially eligible and there is death, absence or incapacity of one or both parents. 42 U.S.C.A. § 606(a) defines a dependent child as a needy child "who has been deprived of parental support or care by reason of the ... continued absence from the home ... of a parent." In the present case, the need of appellant's child is not disputed. 45 C.F.R. § 233.90(c)(1)(iii) (1982) states that "continued absence... constitutes the reason for deprivation of parental support or care when the parent is out of the home". (emphasis supplied). The absence must, however, interrupt or terminate the parent's functioning as a provider of maintenance, physical care or guidance for the child." (emphasis supplied). Finally, "the known or indefinite duration of the absence ... [must preclude] counting on the parent's performance of the function of the planning for the present support or care of the child."
New Jersey's regulations reflect the federal counterparts and facially are in full compliance with them. N.J.A.C. 10:81-2.7(d) (Public Assistance Manual § 2533) (PAM) defines continuous absence:
... when it interrupts or terminates the parent's functioning as a provider for maintenance, physical care or guidance for the child, and the known or indefinite duration of the absence precludes the parent's performance of his/her function in planning for the present support or care of the child. If these conditions exist, the parent may be absent for any reason, and he/she may have left only recently or sometime previously. (emphasis supplied).
The preceding regulation establishes that absence means that a parent is out of the home for any reason, or as conversely stated by the United States Supreme Court in Carleson v. *138 Remillard, supra, 406 U.S. at 602-603, 92 S.Ct. at 1935: "[t]he presence in the home of the parent who has the legal obligation to support is the key to the AFDC program." (emphasis supplied)
In support of its position, the Department relies principally upon Simone v. Division of Public Welfare, supra, Shannon v. Department of Human Services, 157 N.J. Super. 251 (App. Div. 1978) and two unpublished decisions of this court.
In Shannon the evidence indicated that the father was actually living with the family unit because: (1) the father's mail was received at the recipient's address; (2) the utilities were billed in his name; (3) the house was leased in his name; (4) his driver's license and automobile registration were listed at the mother's address; and (5) a letter sent to the father's reported address was returned marked "no forwarding address." Shannon, supra, at 253. While the Director of Welfare accepted the mother's explanations and concluded that the father was not living with the family unit, he affirmed a reduction in the recipient's benefits because the child could not be considered deprived "of parental care [and] support" since the father frequently visited the child. Id. at 254.
In Shannon we remanded for a hearing concerning the length and frequency of the father's visits to determine whether his absence "was `continued' within the meaning of PAM 2533." Id. at 258. If there exists a pattern of frequent visitation, Shannon supports the Director's interpretation that these visits, under the facts and circumstances of that case, negate "one condition for eligibility under the AFDC program, continued absence." Id. at 255.
In Simone we held, contrary to the Director's contention, that Eligibility for AFDC Benefits, N.J.A.C. 10:81-2.7(d), is not determined on the basis of whether an absent parent has the opportunity to exercise parental responsibility irrespective of the parent's physical presence in the home. Simone, supra, 191 N.J. Super. at 233. Simone noted that the regulation expressly *139 directs that continued absence of the parent from the home constitutes deprivation of parental support or care, without any qualification respecting the opportunity of the parent to exercise responsibility regardless of the absence. Ibid.
Here we hold, in conformity with C.F.R. § 233.90(c)(1)(iii) (1982), that a parent is absent when the absence interrupts or terminates the parent's function as a provider of maintenance, physical care or guidance for the child. Moreover, in accordance with N.J.A.C. 10:81-2.7(d) the known or indefinite duration of the absence must preclude the parent's performance or function in planning for the present support or care of the child. But, a pattern of frequent visitations is relevant evidence for evaluating eligibility or ineligibility under AFDC but in itself is not a reason for termination. Visits weigh on the issue of whether the absent parent's ability to perform certain defined functions within the family unit have been interrupted or terminated.
In Freeman v. Lukhard, 465 F. Supp. 1269 (E.D.Va. 1979) the United States District Court was confronted with the problem of whether an absent parent contributed to the physical care, maintenance and guidance of the children. "[I]f the absent parent provides any amount of all three, however small, the child is ineligible for AFDC benefits." Id. at 1271. In Freeman, the youngest children were declared ineligible for AFDC because their father not only visited them daily but also because he took an active role in planning for their daily care, and provided them with diapers and milk. Ibid. Despite this, the United States District Court stated the proper test to be applied for a child to be eligible for AFDC-C is: "[i]f the absent parent completely fails to provide any one of the three." Id. at 1271 (emphasis supplied).
Freeman recognizes that the child is not deprived or dependent within the meaning of 42 U.S.C.A. § 606(a) if the absent parent frequently visits with his children and contributes in any small way to that child's maintenance, guidance and *140 support. Shannon, in essence, states that an absent parent who visits his children frequently may be constructively present within the family, and, therefore, not absent for AFDC-C purposes. As we previously pointed out, eligibility for AFDC-C benefits is not determined on the basis of whether the absent parent has the opportunity to exercise parental responsibility irrespective of the parent's physical presence in the home. Simone v. State, supra, 191 N.J. Super. at 233.
Next we turn to advisory opinions received by State officials from the Federal Office of Family Assistance (See Simone v. State, supra, 191 N.J. Super. 233-234 n. 2).
In 1978 the Director of New Jersey's Division of Public Welfare, (Director) requested a legal opinion from the federal agency on the "meaning of the AFDC eligibility requirement that a needy child `be deprived of parental support or care by reason of the ... continued absence from the home ... of the parent.'" Apparently the Director indicated in his request that he interpreted this proviso to mean that a parent who frequently visited the home or had frequent contact with the children was not absent within the meaning of AFDC, and that the children were not deprived within the meaning of that program.
The federal agency responded:
We have been advised that this approach improperly constricts the definition of "continued absence" as set forth in 45 C.F.R. 233.90(c)(1)(iii) and is at odds with the underlying spirit and purpose of the AFDC program.
After reviewing the language contained in 45 C.F.R. § 233.90(c)(1)(iii), the opinion reasoned that if a parent is out of the home, the child is eligible for AFDC and deprived if that absence terminates or interrupts:
(2) ... the parent's functioning as a provider of maintenance[,] physical care or guidance of the child, and

(3) The known or indefinite duration of the absence precludes counting on the parent's performance of his function in planning for the present support or care of the child (Emphasis added).
The opinion then advises:
... it is important to note that requirements "2" and "3" above are both worded in a disjunctive. Thus requirement "2" will be satisfied if either the *141 parent's ability to provide for maintenance and physical care or his ability to provide guidance is disrupted by the character of the absence. Similarly, if the absence precludes planning either for the present suppor [sic] or the care of the child, the requirement is satisfied.
The opinion unequivocally advised the Director that his interpretation was "clearly at odds with Federal regulations". It noted that the:
... Federal regulations established a strict standard for considering the availability of parents [sic] income for the support of his children. Section 45 C.F.R. 233.20(a)(3)(vi)(b) provides that in establishing eligibility and the amount of payment:
... In family groups living together income of the spouse is considered available for his spouse and income from a parent is considered available for children under age 21.
Thus when the parent is not present in the home his income cannot be considered available to his family. Instead the caretaker is required to assign support rights to the Title IV-D agency, and only such part of the absent parent's income which is actually contributed can be taken into account. The family continues to be eligible for assistance except in certain situations where the absent parent's contribution exceeds the agency's need standard.
The letter opinion continues:
... Additionally, to equate `visiting' with `living with' could further disrupt an already troubled family situation. Continued parental involvement is to be encouraged by the AFDC program premising a finding of ineligibility on the fact of visitation standing alone has the opposite effect.
and then concludes:
We trust you will take prompt action to correct these unacceptale practices. You may also wish to review fair hearing decisions which have involved this issue.
In 1982 a New Jersey deputy attorney general requested an opinion from the federal Office of Family Assistance[1] presenting the same question posed by the Director four years earlier. The cover letter sent to him highlighted the contents of the memorandum forwarded to him (prepared in 1982 at the request of the State of Washington) and stated:
As the memorandum notes, the regulation does not require a total cessation of the parent's contact with his/her children for a finding of "continued absence." Therefore frequent visits, in and of themselves, do not negate a finding of deprivation by reason of absence. The criterion is whether the absence of the *142 parent interrupts his/her functionings as a provider of maintenance, physical care or guidance and whether the duration of absence precludes the parent's performance of his/her function in planning for the present support or care of the child.
The memorandum essentially restates the interpretation contained in the 1978 opinion provided the Director. The question posed was "to what extent absent parents can maintain contact with their families and still be considered `absent' for eligibility purposes and whether the parent can be considered to have ceased to provide maintenance, care or guidance to the child when there are continuing contacts with the child."
The opinion responded:
The provisions [45 C.F.R. § 233.90(1)(c)(iii)] does not require a total cessation of the parent's contact with his/her children for a finding of "continued absence". It is recognized that the absent parent may be an important influence in the life of the child and some contacts between the parent and the child are consistent with the purpose of the AFDC program as specified in section 401 of the Act "to help maintain and strengthen family life".
We conclude that the policy of the Department to terminate AFDC benefits upon a mere showing of a frequent pattern of visits between the absent parent and the child is improper. This practice impermissibly imposes a restriction upon eligibility greater than anticipated in the federal regulation, Carleson v. Remillard, supra, 406 U.S. 598 at 600-603, 92 S.Ct. 1932 at 1934-1935, 32 L.Ed.2d 352 (1972).
In Shannon, we remanded to the Director to investigate the length and frequency of the visits and "any other matter deemed relevant to a determination as to whether ... absence ... was continued within the meaning of PAM 2533." 157 N.J. Super. at 258. In other words, there must be a showing that the absent parent continued to function as a parent as defined in the regulation. We hold that frequent visits in and of themselves do not negate a finding of absence under AFDC. The mere opportunity to function as a parent is an improper criterion. Simone, supra, 191 N.J. Super. at 233. To terminate because of an ongoing relationship between the absent parent and his child, the Department must demonstrate that the *143 absence does not interrupt or terminate "the parent's functioning as a provider of maintenance, physical care, or guidance for the child, and the known or indefinite duration of the absence precludes counting on the parent's performance of the function of planning for present support or care of the child." 45 C.F.R. § 233.90(c)(1)(iii). The absent parent must be fulfilling his parental role to disqualify the child from benefits under the AFDC program. In anticipation of this conclusion, the Department argues that as a matter of established facts the absent parent "does provide both care and financial support on a regular, indeed, a daily, basis." It points out that the father lives two blocks away from his child and visits him daily and notes that he has a continuing relationship with the child's mother. It contends that the fact the father cares for his child means that appellant can count on him for the present support or care of the child.
The Board's representatives testified at trial that they terminated benefits because appellant had a continuing relationship with the child's father, and the father visited with the child daily. When asked how it determined whether the absent parent was functioning as a parent, the Board's administrative supervisor stated: "Well he is ... he is there every day to see the child."
The Board offered no other evidence nor produced any witnesses. The father was not called to testify, nor was any member of appellant's family or others who might have been familiar with the situation. Apparently, no investigation was conducted. It is clear that the Board terminated benefits because the father was paying support and daily visiting his child. There was no evidence, let alone sufficient credible evidence, that the father provided maintenance, physical care and guidance for the child and could be counted on in planning for the present support or care of that child.
The ALJ found that: (1) the father paid support and that those payments were current; (2) the father visited the child *144 daily for an hour; and (3) he maintained a continuing relationship with appellant. Based on these findings he concluded that the child was "not deprived of parental support or care."
The standard for appellate review of an administrative agency is whether the findings made could reasonably have been reached on sufficient credible evidence present in the record considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). In this case such evidence does not exist. These findings, adopted by the Department, are insufficient to support termination of the benefits.
Reversed.
NOTES
[1] See Simone v. State, supra, 191 N.J. Super. 233, 234 n. 2.