MARGARET BURRUS, APPELLANT, v. DEPARTMENT OF
HUMAN SERVICES, DIVISION OF PUBLIC
WELFARE, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 21, 1983—Decided April 23, 1984.

Before Judges FRITZ, FURMAN and DEIGHAN.

*Rutgers Legal Aid Clinic,* attorneys for appellant (*John A. West* and *Natarlin R. Best,* on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*James J. Ciancia,* Assistant Attorney General, of counsel; *Valerie L. Egar,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

DEIGHAN, J.A.D.

Appellant, Margaret Burrus, a single parent, received assistance under the Aid to Families with Dependent Children (AFDC) because her child was needy and deprived within the meaning of that program. She and her child resided with her mother who helped care for the infant while appellant attended school. Appellant had been receiving $273 per month from AFDC–C based on the absence of the father from the home.

On June 24, 1982 the Essex County Welfare Board (Board) terminated appellant's assistance payments under AFDC–C because the absent father visited the child "at least three times a week" and because appellant indicated that she and the father were considering the possibility of living together.

Appellant requested a fair hearing and the matter was heard by an Administrative Law Judge (ALJ). An initial decision was issued reversing termination of payments. This determination was rejected by the Director of the Division of Public Welfare (Director) in his final decision affirming the Board's termination of appellant's AFDC–C benefits.

The child's father, a pre-medical student from Nigeria, attends Kean College. Under the terms of his student visa, he is not permitted to work in this country. He is supported by his parents in Nigeria who forward money through the college to pay for his educational and living expenses. The flow of currency out of Nigeria is restricted. The father indicated that when his parents were informed that he was a father, they offered to provide financial assistance; however, because of Nigeria's currency control policies, a court order is necessary before funds can be remitted and then they must be collected through the college.

The termination issue arose when appellant indicated that she was contemplating moving. The father had been visiting the child regularly, and he suggested that the three try living together at his housing facility. Appellant called the Board and asked whether this living arrangement would affect her eligibility since the continued support was necessary to pay for at least half of the rent which was then being paid by the father's roommates. According to the Board, appellant indicated that "she wanted to live with him on the basis of sort of a trial marriage type situation."

In addition to the reasons initially given for termination of the AFDC–C benefits, the Board also concluded that there was no absence nor deprivation of parental support or care within

the meaning of AFDC requirements.  The ALJ disagreed.  She reasoned:

... The father is living separately and is presently legally barred from providing support. The contemplation of establishing a mutual domicile and the affection and concern expressed by the father do not alleviate the child's present deprivation of support and care from his father who does not live with him. The establishment of a mutual domicle [sic], not the contemplation of same, would affect eligibility for AFDC–C.

In rejecting this initial determination, the Director concluded that the father was not continuously absent within the requirements of AFDC because he maintained "a continuing relationship with the child."

Appellant argues that a mere showing of a continuing relationship between an absent parent and his child is insufficient to negate a finding that the parent is continuously absent for AFDC purposes.  She contends that the Director has introduced a standard based on a presumption contrary to the statutory intent "because [the standard] equates any evidence of a continuing relationship between the parent and child with the assumption of parental responsibility."

Initially, it is necessary to review the applicable statutes and regulations.  42 *U.S.C.A.* § 606(a) defines a dependent child as a needy child "who has been deprived of parental support or care by reason of the ... continued absence from the home ... of a parent."  In the present case, the need of appellant's child is not disputed.  45 *C.F.R.* § 233.90(c)(1)(iii)(1982) states that "continued absence ... constitutes the reason for deprivation of parental support or care when the parent is *out of the home.*"  (Emphasis supplied.)  The absence must, however, "interrupt or terminate the parent's functioning as a provider of maintenance, physical care *or* guidance for the child."  (Emphasis supplied.)  Finally, "the known or indefinite duration of the absence ... [must preclude] counting on the parent's performance of the function in the planning for the present support or care of the child."

New Jersey's regulations reflect the federal counterparts and facially are in full compliance with them. As mandated by *N.J.A.C.* 10:81–2.7(d) (Public Assistance Manual 2533) (PAM) continuous absence is:

... when it interrupts or terminates the parent's functioning as a provider for maintenance, physical care *or* guidance for the child, and the known or indefinite duration of the absence precludes the parent's performance of his/her function in planning for the present support or care of the child. If these conditions exist, the parent may be absent for any reason, and he/she may have left only recently or sometime previously [Emphasis supplied].

The preceding regulation establishes that absence means that a parent is out of the home for any reason. Or, as conversely stated by the United States Supreme Court in *Carleson v. Remillard*, 406 *U.S.* 598, 602–603, 92 *S.Ct.* 1932, 1935, 32 *L.Ed.* 2d 352 (1972), "[t]he *presence* in the home of the parent who has the legal obligation to support is the key to the AFDC program." (Emphasis supplied.)

We recently dealt with the underlying eligibility requirements for AFDC benefits in similar factual situations. *Simone v. State*, 191 *N.J.Super.* 228 (App.Div.1983); *Shannon v. Department of Human Services*, 157 *N.J.Super.* 251 (App.Div.1978). In *Shannon* the evidence indicated that the father was actually living with the family unit because: (1) the father's mail was received at the recipient's address; (2) the utilities were billed in his name; (3) the house was leased in his name; (4) his driver's license and automobile registration were listed at the mother's address, and (5) a letter sent to the father's reported address was returned marked "no forwarding address." *Shannon, supra*, at 253. While the Director of Welfare accepted the mother's explanation and concluded that the father was not living with the family unit, he affirmed a reduction in the recipient's benefits because the child could not be considered deprived "of parental care [and] support" since the father frequently visited the child. *Id.* at 254.

In *Shannon* we remanded for a hearing concerning the length and frequency of the father's visits to determine wheth-

er his absence "was 'continued' within the meaning of PAM 2533." *Id.* at 258. If there exists a pattern of frequent visitation, *Shannon* supports the Director's interpretation that these visits, under the facts and circumstances of the case, negate "one condition for eligibility under the AFDC program, continued absence." *Id.* at 255.

In *Simone* we held, contrary to the Director's contention, that eligibility for AFDC benefits, *N.J.A.C.* 10:81–2.7(d), is not determined on the basis of whether an absent parent has the *opportunity* to exercise parental responsibility irrespective of the parent's physical presence in the home. *Simone, supra,* 191 *N.J.Super.* at 233. *Simone* noted that the regulation expressly directs that continued absence of the parent from the home constitutes deprivation of parental support or care, without any qualification respecting the opportunity of the parent to exercise responsibility regardless of the absence. *Ibid.*

In *Freeman v. Lukhard,* 465 *F.Supp.* 1269 (E.D.Va.1979) the United States District Court was confronted with the problem of whether an absent parent contributed to the physical care, maintenance and guidance of the children. "[I]f the absent parent provides any amount of all three, however small, the child is ineligible for ADC benefits." *Id.* at 1271. In *Freeman,* the youngest children were declared ineligible for AFDC because their father not only visited them daily but also because he took an active role in planning for their daily care, and provided them with diapers and milk. *Ibid.* Despite this, the United States District Court stated the proper test to be applied for a child to be eligible for AFDC–C is: "[i]f the absent parent completely fails to provides any one of the three." *Id.* at 1271 [emphasis supplied].

*Freeman* recognizes that the child is not deprived or dependent within the meaning of 42 *U.S.C.A.* § 606(a) if the absent parent frequently visits with his children and contributes in any small way to that child's maintenance, guidance *and* support.

*Shannon,* in essence, states that an absent parent who visits his children frequently may be constructively present within the family, and, therefore, not absent for AFDC–C purposes. As we previously pointed out, eligibility for AFDC–C benefits is not determined on the basis of whether the absent parent has the opportunity to exercise parental responsibility irrespective of the parent's physical presence in the home. *Simone v. State, supra,* 191 *N.J.Super.* at 233.

Here we hold, in conformity with *C.F.R.* § 233.-90(c)(1)(iii) (1982), that a parent is absent when the absence interrupts or terminates the parent's function as a provider of maintenance, physical care or guidance for the child. Moreover, in accordance with *N.J.A.C.* 10:81–2.7(d) the known or indefinite duration of the absence must preclude the parent's performance of function in planning for the present support or care of the child. A pattern of frequent visitations is relevant evidence for evaluating eligibility or ineligibility under AFDC but in itself is not a reason for termination. Visits weigh on the issue of whether the absent parent's ability to perform certain defined functions within the family unit have been interrupted or terminated.

This holding is fortified by the position of the federal authorities on the general issue of deprivation of benefits by reason of continued absence of a parent from the home. The New Jersey Attorney General requested an opinion from the Commissioner for Family Assistance of the Social Security Administration, Department of Health & Human Services of the federal government. *Simone v. State, supra,* at 191 *N.J.Super.* 233–234, n. 2. In response to the question posed by the Attorney General, the Assistant Regional Commissioner forwarded a copy of a memorandum to the Regional Commissioner, Region X, Seattle which dealt with the general issue of deprivation by reason of continued absence. The memorandum concluded:

> As the memorandum notes, the regulation does not require a total cessation of the parent's contact with his/her children for a finding of "continued absence." Therefore frequent visits, in and of themselves, do not negate a finding of

deprivation by reason of absence. The criterion is whether the absence of the parent interrupts his/her functioning as a provider of maintenance, physical care or guidance and whether the duration of absence precludes the parent's performance of his/her function in planning for the present support or care of the child. [*Id.* at 234].

We conclude that the apparent policy of the Director to terminate AFDC–C benefits upon a mere showing of a frequent pattern of visits between the absent parent and the child is improper. This practice impermissibly imposes a restriction upon eligibility greater than that permitted to be imposed in the federal regulation, *Carleson v. Remillard, supra,* 406 *U.S.* 598, 602–603, 92 *S.Ct.* 1932, 1935, 32 *L.Ed.*2d 352.

In *Shannon, supra,* 157 *N.J.Super.* at 253 we remanded to the Director to investigate the length and frequency of the visits and "any other matter deemed relevant to a determination as to whether ... absence ... was continued within the meaning of PAM 2533." In other words, there must be a showing that the absent parent continued to function as a parent as defined in the regulation to disqualify the child from benefits under the AFDC–C program.

The Director noted that the father visits the child frequently and stated:

... Certainly one cannot state that the relationship between Mr. Olasogba [the father] and his child, as reflected in the transcript and in the Administrative Law Judge's initial decision, portrays a father who is "precluded by the known or indefinite duration of his absence" from performing "his function in planning for the support or care of the child." 45 C.F.R. § 233.90(c)(iii). Nor can it be asserted that Mr. Olasogba's absence is "such as to terminate or at least interrupt [his] role as provider of maintenance, physical care, or guidance for the child." 45 C.F.R. § 233.90(c)(iii). Indeed, but for the fact he resides separately from his child, Mr. Olasogba appears to function as any father would.

█ The standard for appellate review of an administrative agency is whether the findings made could reasonably have been reached on sufficient credible evidence present in the record considering the proofs as a whole. *Close v. Kordulak Bros.,* 44 *N.J.* 589, 599 (1965).

From our review of the record we fail to find support for the conclusion, expressed in the Director's brief (but not in the final decision), that "but for the fact that he resides separately from his child, Mr. Olasogba appears to function as any father would." The only evidence produced by the Board was that the father frequently visited the child and the parents were considering the possibility of living together. The Board offered no other evidence nor did it produce any other witnesses. The father was not called upon to testify, nor was any member of appellant's family or others who might have been familiar with the situation. So far as the record reveals, no investigation was conducted. There was no evidence that the father contributed support to the child. To the contrary the evidence supports a finding that he did *not* contribute to the child's support. As found by the ALJ the father was legally barred under his visa from working because he was a foreign student, and the resources available from his parents in Nigeria were restricted by that country's limitations on currency to his educational and personal needs. Therefore, it cannot be concluded that the father provides physical care and guidance. While he may visit the child a few times each week and may exhibit pride and love toward the infant, that "continuing relationship" does not constitute the performance of parental functions.

■ Apparently it is the Director's policy to terminate benefits on the basis of a showing that a "continuing relationship" exists between the absent parent and the child. In this respect, he disregards the various elements of a parental "deprivation" within the meaning of AFDC. He has equated "continuing relationship" with the assumption of parental responsibility. No evidence was produced to establish that the visiting parent contributes to the three basic requirements for disqualification for AFDC benefits, namely, the maintenance, physical care and guidance of the child. The current policies of the Board and Director are contrary to the intent and purpose of both the Federal and State regulations.

Reversed and remanded with directions for further proceedings not inconsistent with this opinion.