**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1432-16T4
A-1434-16T4

IN THE MATTER OF
ROBERT RANDOLPH,
JUVENILE JUSTICE COMMISSION

_____

Submitted June 6, 2018 — Decided September 5, 2018

Before Judges Alvarez, Currier, and Geiger.

On appeal from the New Jersey Civil Service
Commission, Docket Nos. 2015-3213, 2015-3214,
and 2015-3215.

Charles J. Sciarra argued the cause for
appellant Robert Randolph (Sciarra &
Catrambone, LLC, attorneys; (Charles J.
Sciarra, of counsel; Deborah Masker Edwards,
on the brief).

Emily M. Bisnauth, Deputy Attorney General,
argued the cause for respondent New Jersey
Juvenile Justice Commission (Gurbir S. Grewal,
Attorney General, attorney; Melissa Dutton
Schaffer, Assistant Attorney General, of
counsel; Peter H. Jenkins, Deputy Attorney
General, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent Civil Service Commission
(Pamela N. Ullman, Deputy Attorney General,
on the brief).

PER CURIAM

Robert Randolph appeals from an October 21, 2016 final determination of the Civil Service Commission (CSC), which upheld his demotion to senior parole officer with the Juvenile Justice Commission (JJC). For the reasons that follow, we affirm.

The JJC served Randolph with two Final Notices of Disciplinary Action (FNDA) sustaining disciplinary charges and demoting him. The charges in the first FNDA were conduct unbecoming a public employee and misuse of state property, namely, the internet connection available at his workplace and his workplace computer. N.J.A.C. 4A:2-2.3(a)(6) and (8). The JJC also served him with an FNDA sustaining a charge of other sufficient cause defined as violation of State policy prohibiting discrimination in the workplace, N.J.A.C. 4A:2-2.3(a)(12),[1] based on his possession and transmission of the materials in question—semi-nude or sexually suggestive photographs of women. Randolph appealed, and the Division of Appeals and Regulatory Affairs transmitted the matter to the Office of Administrative Law under the Administrative Procedures Act, N.J.S.A. 52:14B-1 to -15, for hearing under the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6.

---

[1] The FNDA charged defendant with N.J.A.C. 4A:2-2.3(a)(11), but that "other sufficient cause" has since been recodified as N.J.A.C. 4A:2-2.3(a)(12).

The ALJ issued an initial decision finding that the Agency had not met its preponderance of the evidence burden. He relied mainly on the agency investigator's lack of training on the policies related to computer usage and banning discrimination because the investigator could not produce written copies of the policies, and because he drew his conclusions regarding the sexual nature of the photographs on Randolph's computer from his personal opinion. However, the ALJ did find as a fact that Randolph had forwarded sexually suggestive photographs (which are included in the appendices on this appeal) to six other people, including two colleagues. Randolph also forwarded the photographs to a subordinate.

On May 21, 2015, the CSC addressed the exceptions filed by the JJC and cross-exceptions filed by Randolph in writing, after a May 6, 2015 public meeting at which formal action regarding the matter was taken.[2] The CSC agreed with the JJC that Randolph had violated State policies by transmitting inappropriate emails. Specifically, the CSC found that the violation occurred when Randolph transmitted a slide show of scantily clad women to others—two of whom were colleagues—thus engaging in conduct

---

[2] The JJC filed other charges which were dismissed. Those dismissals are neither being appealed nor are they relevant to the issues raised in this matter.

unbecoming a public employee. The CSC defined such conduct as "conduct that adversely affects morale or efficiency or has a tendency to destroy public respect for governmental employees and confidence in the operation of public services." Furthermore, the CSC found that forwarding emails containing "slide shows of scantily clad women in sexually suggestive poses" to a subordinate constituted a violation of the State's policy against discrimination. The CSC also noted that Randolph was an assistant district parole supervisor when he engaged in the conduct, and thus held to a higher standard. See N.J.A.C. 4A:7-3.1(e). Therefore, the CSC affirmed the "appointing authority's" decision to demote Randolph to senior parole officer for violating N.J.A.C. 4A:2-2.3(a)(6) and N.J.A.C. 4A:2-2.3(a)(12).

Randolph filed an unsuccessful motion for reconsideration. In its denial, the CSC first addressed Randolph's argument that the original decision was untimely. The CSC observed that pursuant to N.J.S.A. 52:14B-10(c), a decision may issue beyond the forty-five day statutory framework so long as the agency obtains an extension order from the OAL, which the CSC did. Additionally, formal action was taken at a public meeting on May 6, 2015, within the forty-five day window. In the opinion of the CSC, the OAL's order of extension allowed it to issue a final decision up until June 28, 2015. Thus, the May 21 written decision formalizing the

action taken on May 6 was also timely. Therefore, the CSC reasoned, the "deemed adopted" language of N.J.S.A. 52:14B-10(c) did not apply. This appeal followed.

Randolph raises the following issues for our consideration:

POINT I
THE CIVIL SERVICE COMMISSION'S FINAL ADMINISTRATIVE ACTION DENYING RANDOLPH'S MOTION FOR RECONSIDERATION WHEREIN IT AFFIRMED ITS MAY 21, 2015 DECISION, AFFIRMING THE JJC'S DISCIPLINARY ACTIONS AND DEMOTION OF RANDOLPH RELATED TO HIS COMPUTER USAGE AND ALLEGED DISCRIMINATION AND HARASSMENT IN THE WORKPLACE, WAS IN ERROR AND ARBITRARY, CAPRICIOUS, UNREASONABLE AND NOT SUPPORTED BY THE SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.

POINT II
THE CIVIL SERVICE COMMISSION WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE, COMMITTING A MATERIAL ERROR IN ISSUING ITS FINAL DECISION, AS IT WAS NOT IN COMPLIANCE WITH N.J.S.A. 40A:14-204.

POINT III
THE CSC'S DECISION WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND IT ERRED IN AFFIRMING ITS FINAL DECISION AS IT WAS NOT ABIDING BY THE POLICY BEHIND THE CIVIL SERVICE ACT IN ASSURING DISCIPLINARY MATTERS ARE FAIRLY DETERMINED AS IT IS A PRO-MANAGEMENT BOARD.

POINT IV
THE CIVIL SERVICE COMMISSION ACTED ARBITRARY, CAPRICIOUS, AND UNREASONABLE ERRING IN FINDING THAT RANDOLPH MISUSED PUBLIC PROPERTY AND ENGAGED IN CONDUCT UNBECOMING AS ITS DECISION WAS NOT SUPPORTED BY THE SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.

A. As found by the A.L.J., Randolph did not violate the Administrative Code, misuse the State computer, or violate the JJC rules and regulations by receiving and not opening, without solicitation, e-mails that had photographs attached alleged to be inappropriate.

B. It was arbitrary, capricious, unreasonable, and a failure to apply the law for Civil Service Commission to find Randolph violated the Administrative Code and the JJC's policies pertaining to a charge that Randolph was not given any notice.

POINT V
THE CIVIL SERVICE COMMISSION ERRED IN AFFIRMING ITS FINAL DECISION ACTING ARBITRARY, CAPRICIOUS, AND UNREASONABLE IN FINDING THAT RANDOLPH COMMITTED DISCRIMINATION AND HARASSMENT IN THE WORKPLACE AS THIS DECISION WAS NOT SUPPORTED BY THE SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD.

A. As found by the ALJ, Randolph did not violate the State Policy prohibiting discrimination in the workplace by receiving without solicitation, and not opening, e-mails that had photographs alleged to be inappropriate.

B. It was a clear material error for the CSC to find Randolph had committed discrimination in the workplace pertaining to a charge that he was not given any notice of which is arbitrary, unreasonable and capricious as there was a failure to apply the appropriate law.

A-1432-16T4

POINT VI
IN THE ALTERNATIVE, IF A VIOLATION IS
SUBSTANTIATED PROGRESSIVE DISCIPLINE SHOULD
APPLY.

We first address Point III. This argument is so lacking in merit as to not warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). A numerical review of decisions rendered by the CSC in the last two years does not support the proposition that the Agency is biased and "pro management," as Randolph alleges.

Also substantially lacking in merit is the contention raised in Point II, that the CSC violated the forty-five day timeline found in N.J.S.A. 40A:14-204. That section of the statute applies to the suspension or termination of law enforcement officers or firefighters subject to Title 11A. Randolph is not in that category. The relevant forty-five-day time period is, as the CSC noted, found in N.J.S.A. 52:14B-10(c).

The CSC rendered its decision on May 6 at a public meeting, taking formal action rejecting the ALJ's initial decision within the time allowed by statute. It subsequently obtained an extension order and issued a written decision documenting its prior action well within the OAL extension and fifteen days after formal action. See Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 539 (App. Div. 2004). Thus, the deemed adopted rule

does not apply.  The point does not warrant further discussion in a written opinion.  R. 2:22-3(e)(1)(E).

The remaining alleged errors Randolph raises stem from two theories.  First, Randolph claims the CSC's decision was arbitrary, capricious and unreasonable, and not supported by the substantial credible evidence in the record.  Second, Randolph contends that progressive discipline should have been applied, making the demotion improper.

We only reverse the decision of an administrative agency where "arbitrary, capricious, or unreasonable or [] not supported by substantial credible evidence in the record as a whole."  Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); Campbell v. Dep't of Civil Serv., 39 N.J. 556, 566 (1963); Town of Belville v. Coppola, 187 N.J. Super. 147, 153 (App. Div. 1982).

In deciding whether agency action is proper, we ask "whether the findings made could have been reasonably reached . . . considering the proofs as a whole, with due regard also to the agency's expertise when such expertise is a pertinent factor."  Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); Burrus v. Dep't of Human Servs., Div. of Pub. Welfare, 194 N.J. Super. 60, 67 (App. Div. 1984); Freud v. Davis, 64 N.J. Super. 242 (App. Div. 1960).

A presumption of reasonableness attaches to the actions of administrative agencies, particularly when an agency is dealing with specialized matters within its area of expertise. Newark v. Nat. Res. Council, 82 N.J. 530, 539-41 (1980); In re Matter of Vey, 272 N.J. Super. 199, 205 (App. Div. 1993). We do not substitute our judgment for that of the agency and, if there is any argument supporting the agency action, it must be affirmed. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988).

Furthermore, petitions for reconsideration must include new evidence or additional information not presented at the original proceeding which would change the outcome, along with the reason the evidence has not been previously proffered. See N.J.A.C. 4A:2-1.6(b). Additionally, the petition must demonstrate that a clear material error has occurred. Ibid.

We agree that Randolph was entitled to notice from the JCC with regard to the charges. See Pepe v. Twp. of Springfield, 337 N.J. Super. 94, 97 (App. Div. 2001). Contrary to his claim, however, Randolph received adequate notice. The FNDA specifies that an Office of EEO investigative report substantiated that he possessed sexually inappropriate material on his work computer.

Randolph argues he was merely charged with possession, as opposed to transmission, and that thus he cannot be found guilty of misuse. The argument is specious. Randolph transmitted the

material irrefutably proving he knew it existed in his computer. He was on notice of the facts leading to the charges.

Randolph's transmission of the materials established conduct unbecoming a public employee. This longstanding offense, as the CSC pointed out, is behavior "that adversely affects morale or efficiency or has a tendency to destroy public respect for governmental employees and confidence in the operation of public services." The CSC properly relied on In re Emmons, 63 N.J. Super. 136 (App. Div. 1960), in finding that a State employee's transmission of sexually explicit materials from a State computer, originating from a State e-mail address, during work hours, is conduct which certainly has a tendency to erode public respect for governmental employees and to diminish confidence in the operation of public service.[3] Thus, the CSC's decision in this regard was not arbitrary, capricious or unreasonable. The CSC drew reasonable conclusions from irrefutable proofs.

Similar arguments are made by Randolph with regard to the application of the State's anti-discrimination policy. Forwarding such material to colleagues and a subordinate at work is clearly the transmission of demeaning images regarding gender. See

---

[3]  Emmons is an early decision regarding conduct unbecoming, defining the disciplinary charge as including conduct that undermines "public respect[.]" Id. at 140.

A-1432-16T4

N.J.A.C. 4A:7-3.1(b)(1)(vii). There is no question that Randolph did not intend to harass or demean the recipients of the emails——that is not the gravamen of the offense, however. Rather, it is the transmission of material which is demeaning to women to others in the workplace that gives rise to the violation. N.J.A.C. 4A:7-3.1(b)(1)(vii) actually offers by way of an example of such behavior, the display of material in the workplace "that contains derogatory or demeaning language or images pertaining to any of the protected categories." Randolph's transmission readily falls within that language.

Furthermore, at the time Randolph transmitted the material, he was held to a higher standard because of his supervisory role, as the CSC also pointed out. See N.J.A.C. 4A:7-3.1(e). Thus, the CSC's decision that Randolph violated the State's anti-discrimination policy is neither arbitrary nor capricious, but is founded on irrefutable proofs and a clearly expressed policy in effect at the time of the conduct.

Finally, Randolph alleges that his demotion was disproportionate to his conduct and that it violated principles of progressive discipline. We alter a disciplinary penalty if "such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." In re Herrmann, 191 N.J. 19, 29 (2007) (citing In re

A-1432-16T4

<u>Polk</u>, 90 N.J. 550, 578 (1982)). But progressive discipline need not be employed in every case. <u>Id.</u> at 33. It is inapplicable, "when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." <u>Ibid.</u>

There is no question that Randolph had no prior disciplinary history. But Randolph, a supervisor, forwarded sexually suggestive material to others from his public workplace, including to colleagues, and one subordinate—whose ideas of the behavior expected of a public employee would be influenced by his supervisor's behavior. Given his position and the blatant deviation from workplace policies, the penalty does not shock our sense of fairness. <u>See</u> <u>id.</u> at 29.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1432-16T4